## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTA McAULIFFE INTERMEDIATE SCHOOL PTO, INC.; CHINESE AMERICAN CITIZENS ALLIANCE OF GREATER NEW YORK; ASIAN AMERICAN COALITION FOR EDUCATION; PHILLIP YAN HING WONG; YI FANG CHEN; and CHI WANG, | _____ Civ. _____ (_____) |
| | |
| Plaintiffs, | **COMPLAINT** |
| | |
| -against- | |
| | |
| BILL DE BLASIO, in his official capacity as Mayor of New York; and RICHARD A. CARRANZA, in his official capacity as Chancellor of the New York City Department of Education, | |
| | |
| Defendants. | |

## INTRODUCTION

1.      New York City's Specialized High Schools are the crown jewels of the Nation's public education system. Parents in New York know that these schools can provide their children with access to a brighter future. Defendants New York City Mayor Bill de Blasio and Chancellor of the New York City Department of Education Richard Carranza, who, subject to state law, control admissions to the Specialized High Schools, have repeatedly stated their view that there are too many Asian-Americans students at these schools.

2.      To remedy that supposed problem, Defendants gerrymandered the "Discovery Program," originally designed to help *all* of New York City's low-income students scoring just below the examination cutoff get a chance for admission. Defendants are expanding the Discovery Program to one-fifth of each Specialized High School's entering class, but then restricting it to students who attend particularly low-income schools. In practice, Defendants' reorganization of the Discovery Program operates as a set-aside, disproportionately prohibiting Asian-American students from competing for 20 percent of the seats at each Specialized High School. Defendants' expansion of Discovery also disproportionately harms Asian-American students by decreasing the number of students who can gain admission without Discovery.

3.      Today, a middle-school Parent Teacher Organization, two Asian-American civil rights groups, and three individual parents bring this civil rights action to vindicate their equal protection rights under the Fourteenth Amendment to the United States Constitution. Plaintiffs allege that Defendants acted to modify the Discovery Program in order to discriminate against Asian-American applicants to the Specialized High Schools. They seek injunctive relief to prevent Defendants from enforcing the Discovery changes and a declaration that the changes are unconstitutional.

**JURISDICTION AND VENUE**

4.      This action arises under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1981 and 1983. The Court has jurisdiction over these federal claims under 28 U.S.C. §§ 1331 (federal question) and 1343(a) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

5.      The challenged expansion and reorganization of the Discovery Program will take effect during the 2019 admissions cycle, which will determine the composition of the freshman class at the Specialized High Schools in the fall of 2019. A present and concrete controversy between the parties therefore exists.

6.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1)-(2). Defendants reside within this district and a substantial part of the events giving rise to the claim have occurred or will occur in the Southern District of New York.

**PARTIES**

7.      Plaintiff Christa McAuliffe Intermediate School PTO, Inc. (McAuliffe PTO) is a private organization of parents and teachers at the Christa McAuliffe Intermediate School (I.S. 187), a public school located at 1171 65th Street, Brooklyn, New York. McAuliffe PTO was formed in part to advocate for the interests of I.S. 187 students in the Specialized High School admissions process. I.S. 187 is a high performing Intermediate School. Out of the 274 eighth graders who graduated in 2018, 205 are currently attending the Specialized High Schools, more than any other intermediate school in New York City. It is also majority Asian-American and low-income: in the 2017-18 school year, I.S. 187 was 67.5 percent Asian-American, and 65.8 percent its students were classified as being in poverty. Nevertheless, I.S. 187 students are no longer eligible for the Discovery Program under the challenged policy. Children of McAuliffe PTO

members may no longer compete for 20 percent of the seats at the Specialized High Schools. Thus, members of McAuliffe PTO "are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 342 (1977) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).

8.     Plaintiff Chinese American Citizens Alliance of Greater New York (CACAGNY) is a nonprofit organization organized under Section 501(c)(8) of the Internal Revenue Code. Its mission is to empower Chinese Americans by advocacy for Chinese-American interests based on the principles of fairness and equal opportunity, and guided by the ideals of patriotism, civility, dedication to family and culture, and the highest ethical and moral standards. CACAGNY has several members with children who would like to apply to New York City's Specialized High Schools but will now be subject to an admissions policy devised to discriminate against Asian-American students. CACAGNY has also had to "devote significant resources" to counteracting the challenged policy and Defendants' other efforts to reduce the percentage of Asian-American students at New York City's Specialized High Schools. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

9.     Plaintiff Asian American Coalition for Education (AACE) is nonprofit organization organized under Section 501(c)(3) of the Internal Revenue Code. It is a non-political, national organization created to fight for Asian-American children's equal education rights. To carry out its mission, AACE files administrative complaints and takes legal actions against universities or other education-related institutions that discriminate against Asian-American applicants. Because of AACE's mission, it too has had to devote significant resources to opposing the challenged policy.

10.     Plaintiff Phillip Yan Hing Wong was born in Hong Kong, moved to the United States in 1974, and has resided in Elmhurst, Queens since 1976. He is a self-employed translator. His daughter, A.W., is an eighth-grader at I.S. 5, a public school in Queens. She took the Specialized High School Admissions Test (SHSAT) in October and hopes to enroll at one of the Specialized High Schools in the fall of 2019. The challenged policy makes A.W. ineligible for 20 percent of the seats at each Specialized High School. The expansion of Discovery will also raise the bar for admissions without Discovery, adversely affecting individuals such as A.W.

11.     Plaintiff Yi Fang Chen was born in China and moved to the United States in 1996. Although she came to this country speaking little English, she eventually received a Ph.D. in statistics from Stanford University. She now works as a data scientist in Manhattan. Her son is a first grader at P.S. 105 in Brooklyn. Plaintiff Chen hopes that her son will be able to seek admission to the Specialized High Schools on an equal basis with all other applicants. If the challenged policy remains in effect, however, Plaintiff Chen's son will not be able to compete for 20 percent of the seats at the Specialized High Schools. The expansion of Discovery will also make it more difficult to gain admission without Discovery, adversely affecting individuals such as Plaintiff Chen's son.

12.     Plaintiff Chi Wang is a mother of two children in the New York City public school system. She was born in China and did not speak English until the second grade. She eventually took the SHSAT and was accepted into all the Specialized High Schools. She hopes her children will follow in her footsteps. But if the challenged policy remains in effect, her two children will not be able to compete for 20 percent of the seats at the Specialized High Schools. The expansion of Discovery will also raise the bar for admissions without Discovery, adversely affecting individuals such as Plaintiff Wang's children.

13.     Defendant Bill de Blasio is the Mayor of New York City. In conjunction with Defendant Carranza, he announced the challenged policy on June 3, 2018. In his capacity as the Mayor, Defendant de Blasio controls the New York City Department of Education and the admissions procedures at the Specialized High Schools. He is sued in his official capacity.

14.     Defendant Richard Carranza is the Chancellor of the New York City Department of Education. Defendant Carranza serves at the pleasure of the Mayor, and the Department of Education is entirely within the Mayor's control. He is charged with overseeing New York City's public schools, including the Specialized High Schools. He is sued in his official capacity.

## NEW YORK CITY'S SPECIALIZED HIGH SCHOOLS

15.     The New York City Department of Education operates nine "Specialized High Schools," including some of the most rigorous and prestigious public secondary schools in the United States. Most prominent among them are Stuyvesant High School (Stuyvesant), Bronx High School of Science (Bronx Science), and Brooklyn Technical High School (Brooklyn Tech), collectively referred to as the "Big Three." These schools offer New York City public school students access to a world-class education and a pathway to the nation's elite universities.

16.     The remaining Specialized High Schools are: Brooklyn Latin School (Brooklyn Latin); High School for Mathematics, Science and Engineering at City College of New York; High School of American Studies at Lehman College; Staten Island Technical High School (Staten Island Tech); Queens High School of the Sciences at York College; and LaGuardia High School.

17.     Stuyvesant is known as the most selective of the Specialized High Schools. In 2017-18, 44.3 percent of its 3,336 students were in poverty according to New York City data. Yet the students achieve extraordinary academic success. Of the 766 students who took the redesigned SAT in the class of 2018, the school's 25th-percentile score was 1470, compared to a national

mean of 1061.[1] Stuyvesant has produced four Nobel Laureates and countless leaders in various fields.

18.     Bronx Science has produced eight Nobel Laureates, more than any other secondary school in the United States. Of the school's 2,995 students in 2017-18, 44.2 percent were in poverty.

19.     Brooklyn Tech is the largest of the Big Three. Of Brooklyn Tech's 5,838 students in 2017-18, 60.8 percent were in poverty. The latest available data from Brooklyn Tech's school profile shows that Brooklyn Tech students far exceeded national averages on the SAT: the class of 2016 had a mean score of 1290 on the math and critical reading sections of the "old" SAT, compared to a national mean of 1006.[2]

20.     The other five Specialized High Schools are also very high performing, but have much smaller enrollments. Their total enrollments in the 2017-18 school year were: 678 at Brooklyn Latin, 500 at High School for Mathematics, Science and Engineering at City College of New York, 400 at High School of American Studies at Lehman College, 1,320 at Staten Island Tech, and 473 Queens High School of the Sciences at York College.

**THE SHSAT**

21.     Under a New York law enacted in 1971, known as the Hecht-Calandra Act, admissions to the Specialized High Schools must be based "solely and exclusively by taking a competitive, objective and scholastic achievement examination, which shall be open to each and every child in the city of New York." N.Y. Educ. Law § 2590-g(12)(b) (1997). The current version

---

[1] Stuyvesant High School Profile 2018-19, *available at* https://stuy.enschool.org/ourpages/auto/2013/3/7/37096823/Class%20of%202019%20profile%20FINAL-ilovepdf-compressed.pdf (last visited Dec. 10, 2018) (Stuyvesant numbers) and College Board, SAT Suite of Assessments Annual Report (2018), *available at* https://reports.collegeboard.org/pdf/2018-total-group-sat-suite-assessments-annual-report.pdf (last visited Dec. 10, 2018) (national means).
[2] Brooklyn Technical High School Profile 2016, *available at* http://www.bths.edu/SCHOOL_FILES/2016_College_Profile.pdf (last visited Dec. 10, 2018).

of the statute refers back to the text requiring the examination. N.Y. Educ. Law § 2590-h(1)(b). The law's examination requirement is therefore currently operative.

22.     Eight of the Specialized High Schools utilize the Specialized High School Admissions Test (SHSAT) as the lone factor in admissions decisions. The ninth school, LaGuardia High School, is an arts school and uses an audition process for admissions. Because the challenged policy affects only the Specialized High Schools that utilize the SHSAT, it does not apply to LaGuardia.

23.     Students applying to the Specialized High Schools take the SHSAT and rank the schools by order of preference. The cutoff scores vary from year to year, but in 2018 the lowest scores admitted to each school were (out of a possible 800): 559 at Stuyvesant, 519 at Staten Island Tech, 518 at Bronx Science, 516 at High School for Mathematics, Science, and Engineering at City College and High School of American Studies at Lehman College, 511 at Queens High School for the Sciences at York College, 493 at Brooklyn Tech, and 482 at Brooklyn Latin.[3]

24.     By virtue of the ranked-choice system, many students who scored above the 559 Stuyvesant minimum chose to attend one of the other Specialized High Schools. For example, at least one student who scored as high as 671 attended Brooklyn Tech in 2018. But 482 was the cutoff to get into any of the Specialized High Schools through the normal admissions process.[4]

### DISCOVERY PROGRAM

25.     The Hecht-Calandra Act permits the Specialized High Schools to establish a "Discovery Program" to help low-income students gain admission into one of the Specialized High Schools. N.Y. Educ. Law § 2590-h(1)(b). The Discovery Program was—until the changes brought

---

[3] Winnie Hu, *Elite New York High Schools to Offer 1 in 5 Slots to Those Below Cutoff*, N.Y. Times (Aug. 13, 2018), *available at* https://www.nytimes.com/2018/08/13/nyregion/discovery-program-specialized-schools-nyc.html (last visited Dec. 10, 2018).
[4] *Id.*

about by the challenged policy this year—open to all New York City students certified as economically disadvantaged by their local school districts.

26.     Hecht-Calandra includes four requirements for students to participate in Discovery: students must (1) take the SHSAT, but score just below the established cutoff for admission; (2) be certified by their local schools as disadvantaged; (3) be recommended by their local schools as having "high potential for the special high school program"; and (4) pass a summer preparatory program administered by the high school. N.Y. Educ. Law § 2590-g(12)(d) (1997).

27.     New York law does not regulate the size of Discovery. Traditionally, each Specialized High School has approached the admission of Discovery students differently. For example, for several years Stuyvesant did not participate in Discovery at all. In 2018, it admitted 23 students (out of more than 800 students in the freshman class) who completed the summer program.[5] In general, these decisions have been left to the schools themselves.

28.     In 2018, the cutoff SHSAT score for admission into one of the Specialized High Schools through the Discovery Program was 469. New York City limits Discovery to students who missed the cutoff for admission into any of the Specialized High Schools. Therefore, Discovery students in 2018 had SHSAT scores between 469 and 481.[6]

29.     In 2018, 270 students participated in the Discovery Program, representing less than five percent of the total number of students admitted.[7]

---

[5] Hu, *supra* note 3.
[6] *Id*.
[7] *Id*.

## RACIAL DEMOGRAPHICS OF THE SPECIALIZED HIGH SCHOOLS

30.     According to the City, the racial demographics of the New York City public school system as a whole in the 2017-18 school year were 40.5 percent Hispanic, 26 percent Black, 16.1 percent Asian-American, and 15 percent white.

31.     The Specialized High Schools have a predominantly Asian-American student population: each of the eight schools has a higher percentage of Asian-American students than the public schools as a whole.

32.     The Big Three, which have much larger enrollments than the other five Specialized High Schools, are all majority Asian-American schools. In 2017-18, Stuyvesant was 73.5 percent Asian-American, Bronx Science was 65.6 percent Asian-American, and Brooklyn Tech was 59.6 percent Asian-American.

## DEFENDANTS' CHANGES TO DISCOVERY

33.     On June 3, 2018, Defendants announced their plan to expand and reorganize Discovery. Under Defendants' plan, each Specialized High School must expand its Discovery Program to 20 percent of its incoming class by the summer of 2020.[8]

34.     Defendants' plan also limits access to Discovery. Only eighth graders attending schools with an "Economic Need Index" (ENI) of 60 percent or higher are eligible for the program.

35.     The ENI is an existing measure intended to estimate the percentage of students at a particular school who suffer economic hardship. It is being used by Defendants here, however, to prevent Asian-American students from competing for admissions through the Discovery Program.

---

[8] Office of the Mayor, *Mayor de Blasio and Chancellor Carranza Announce Plan to Improve Diversity at Specialized High Schools* (Jun. 3, 2018), *available at* https://www1.nyc.gov/office-of-the-mayor/news/281-18/mayor-de-blasio-chancellor-carranza-plan-improve-diversity-specialized-high/#/0 (last visited Dec. 10, 2018).

36.     The ENI of a particular school is distinct from, and only somewhat related to, that school's poverty rate. The poverty rate is simply the percentage of students in a school who have qualified for free or reduced-price lunch or who receive public assistance from the New York City Human Resources Administration.

37.     A school's ENI, on the other hand, is the average of its students' "Economic Need Values." Each student is assigned an Economic Need Value between zero and one. A student's Economic Need Value is one when (a) the student is eligible for public assistance from the New York City Human Resources Administration; (b) the student has lived in temporary housing for the past four years; or (c) the student has a home language other than English and entered the New York City Department of Education for the first time within the last four years. Otherwise, a student's Economic Need Value is based on the percentage of families with school-aged children in the student's census tract whose income is below the poverty level. The student's Economic Need Value is that number divided by 100. Higher values indicate greater economic hardship.

38.     The ENI restriction operates to limit Discovery not to poor students, but to poor students at particular schools. A severely economically disadvantaged eighth grader attending a school with an ENI below Defendants' 60 percent cutoff is no longer eligible for Discovery. That is true even if the particular student meets all the criteria to have an Economic Need Value of one, such as qualifying for public assistance and living in temporary housing. It is true even when the majority of that student's peers are also living in poverty.

## DISCOVERY CHANGES DISPROPORTIONATELY IMPACT ASIAN AMERICANS

39.     Defendants estimate that their plan to expand and reorganize Discovery will nearly double Black and Hispanic enrollment at the Specialized High Schools, from nine percent to 16 percent.[9]

40.     School-by-school data[10] confirms that Asian-American applicants will bear the brunt of Defendants' plan. According to the 2017-18 school year ENI calculations, students attending 11 of the 24 majority Asian-American schools with eighth-grade enrollment will lose their eligibility for Discovery. That compares to just 20 of the 191 majority Black schools and just nine of the 243 majority Hispanic schools.

41.     When Defendants announced the plan, they initially directed interested persons to the 2016-17 ENI calculations in order to determine which schools would be eligible for Discovery. Under those calculations, students at 18 of the 24 majority Asian-American schools with eighth-grade enrollment are now excluded from the Discovery Program.

42.     It is unclear which ENI calculations Defendants are using for admission to Discovery this year, but either will negatively—and intentionally—impact Asian-American students.

43.     The 2016-17 ENI calculations are more typical as compared to prior years. The 2017-18 numbers, in contrast, are an outlier. The Citywide ENI was 63.9 percent in 2014-15, 61.9 percent in 2015-16, 60.6 percent in 2016-17, and 70.7 in 2017-18.

---

[9] Office of the Mayor, *Mayor de Blasio and Chancellor Carranza Announce Plan to Improve Diversity at Specialized High Schools* (Jun. 3, 2018), *available at* https://www1.nyc.gov/office-of-the-mayor/news/281-18/mayor-de-blasio-chancellor-carranza-plan-improve-diversity-specialized-high/#/0 (last visited Dec. 10, 2018) ("Plan Announcement").
[10] The Citywide and school-by-school data is according to New York City's Demographic Snapshot spreadsheets, *available at* http://infohub.nyced.org/docs/default-source/default-document-library/demographicsnapshot201314to 201718public_final.xlsx (last visited Dec. 10, 2018).

44.     The disproportionate impact will be felt most strongly at the schools that have recently sent the most students to the Specialized High Schools. Even under the 2017-18 ENI calculation, none of the 18 schools which had the highest proportion of their classes receive offers to attend the Specialized High Schools in 2018 are eligible for Discovery. All but three of these schools have a higher proportion of Asian-Americans than the public schools as a whole.

45.     Four of these 18 schools (including I.S. 187, home to Plaintiff McAuliffe PTO) are majority Asian-American, and 423 students from these schools received an offer of admission to attend one of the Specialized High Schools in 2018. These four schools accounted for nearly ten percent of the total offers to attend the Specialized High Schools. Another four are at least 30 percent Asian-American, and 206 students at those schools received an offer of admission to a Specialized High School in 2018.

46.     Aside from those 18 schools, only six of the 15 additional schools which had at least 50 students receive offers to attend the Specialized High Schools in 2018 are eligible for Discovery. The ineligible schools in this category include three that are at least 60 percent Asian-American and have ENIs between 38.4 percent and 52.8 percent. These three schools accounted for another 274 students offered admission to attend the Specialized High Schools in 2018.

47.     Under the 2016-17 ENI calculations (to which Defendants initially directed the public), none of the 15 schools referenced in paragraph 46 are eligible for Discovery. In this group, three more majority Asian-American schools with high poverty rates are ineligible, accounting for another 247 students who received offers of admission to attend the Specialized High Schools in 2018.

48.     As the data plainly show, Defendants' plan disproportionately affects schools with high Asian-American populations. It particularly affects those schools that have sent many

students to the Specialized High Schools in the past, maximizing its negative impact on Asian-American students.

## CONTEMPERANOUS COMMENTS SHOW RACIAL INTENT

49.     Although the Discovery changes are facially race-neutral, Defendants have made several public statements which demonstrate that their intent is to racially balance the Specialized High Schools by decreasing the percentage of Asian Americans who may attend.

50.     In reference to the demographics of the Specialized High Schools, Defendant Mayor de Blasio wrote in an op-ed at Chalkbeat: "Can anyone defend this? Can anyone look the parent of a Latino or black child in the eye and tell them their precious daughter or son has an equal chance to get into one of their city's best high schools?"[11] Defendant de Blasio referred to the racial demographics of the Specialized High Schools as a "monumental injustice."[12] He has tweeted that the Specialized High Schools should look more like the City as a whole.[13]

51.     In reference to the large proportion of Asian-American students at the Specialized High Schools, Defendant Chancellor Carranza stated in an interview with New York's Fox affiliate WNYW that "I just don't buy into the narrative that any one ethnic group owns admission to these schools."[14]

---

[11] Bill de Blasio, *Our Specialized Schools Have a Diversity Problem. Let's Fix It.*, Chalkbeat (June 2, 2018), *available at* https://chalkbeat.org/posts/ny/2018/06/02/mayor-bill-de-blasio-new-york-city-will-push-for-admissions-changes-at-elite-and-segregated-specialized-high-schools/ (last visited Dec. 10, 2018).

[12] *Id.*

[13] Mayor Bill de Blasio (@NYCMayor), Twitter (June 3, 2018), https://twitter.com/nycmayor/status/1003414958464487425?lang=en ("Stuyvesant High School just admitted almost a thousand students, but only ten of those students were African American and less than thirty were Latino. In a city that is majority African American and Latino."); Mayor Bill de Blasio (@NYCMayor), Twitter (June 3, 2018), https://twitter.com/NYCMayor/status/1003415609915400192.

[14] Elizabeth A. Harris & Winnie Hu, *Asian Groups See Bias in Plan to Diversify New York's Elite Schools*, N.Y. Times (June 5, 2018), *available at* https://www.nytimes.com/2018/06/05/nyregion/carranza-specialized-schools-admission-asians.html (last visited Dec. 10, 2018).

52.     New York City's press release touting the changes to the Discovery Program notes that the changes are intended to "improve diversity" and "support greater geographic, racial, and socioeconomic diversity" at the Specialized High Schools.[15]

53.     At the same time they announced the changes to the Discovery Program, Defendants also declared their intention to reduce the significance of and eventually eliminate the SHSAT requirement for admission to the Specialized High Schools. Defendants said that this plan, which would require New York to repeal the Hecht-Calandra Act, would increase Black and Hispanic enrollment at the Specialized High Schools to 45 percent. Defendants seek this change, too, on the ground it would improve racial balance, again though, at the expense of Asian-American students.[16]

## OTHER EVIDENCE OF RACIAL INTENT

54.     New York City's data show that 61 percent of Asian Americans who received offers to attend a Specialized High School in 2018 were low-income. That proportion is the same for Black applicants, while 53 percent of Hispanic applicants offered a seat were poor.[17]

55.     In 2018, 64 percent of Discovery participants were Asian-American. In 2017, Discovery was 67 percent Asian-American.[18]

56.     This data further demonstrate Defendants' motive for using the ENI restriction to limit eligibility for Discovery. Simply expanding Discovery to 20 percent of available seats at each

---

[15] Plan Announcement, *supra* note 9.

[16] *Id.*

[17] NYC Department of Education, *Specialized High Schools Proposal* 13, *available at* https://cdn-blob-prd.azureedge.net/prd-pws/docs/default-source/default-document-library/specialized-high-schools-proposal.pdf?sfvrsn=c27a1e1c _5 (last visited Dec. 10, 2013).

[18] Alex Zimmerman, *New Data Show How Few Black and Hispanic Students Benefit from New York City's Specialized High School Diversity Program*, Chalkbeat (Aug. 14, 2018), *available at* https://www.chalkbeat.org/posts/ny/2018/08/14/discovery-program-data-shsat/ (last visited Dec. 10, 2018).

Specialized High School was unlikely to change the racial balance, because approximately two-thirds of Discovery participants in the past two years were low-income Asian Americans.

57.     Defendants' ENI restriction transforms the expansion of Discovery into a racial proxy. Defendants would have no need to restrict access to Discovery if they were simply seeking more low-income students at the Specialized High Schools.

**CAUSE OF ACTION**
(Violation of the Equal Protection Clause of the Fourteenth Amendment,
through 42 U.S.C. § 1983)

58.     Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 57 as though fully set forth herein.

59.     The Fourteenth Amendment to the United States Constitution provides in relevant part: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

60.     Defendants are acting "under color of state law" within the meaning of 42 U.S.C. § 1983.

61.     The Supreme Court has held that facially neutral state action violates the Equal Protection Clause when it has a disparate impact upon a particular racial group and was enacted with a racially discriminatory purpose. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977). *See also Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000).

62.     According to Defendants' own public statements, their plan to expand and reorganize the Discovery Program for admission into New York City's Specialized High Schools is intended to racially balance the schools by limiting the number of Asian Americans who are admitted.

63.     Defendants' actions and statements demonstrate that the changes were made "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

64.     While the precise impact of the changes is unknowable before they go into effect, Defendants themselves expect and intend the changes to reduce the number of Asian Americans who enroll in the Specialized High Schools.

65.     Individual school data also show that Defendants' plan targets for exclusion from Discovery heavily Asian-American schools that are known to send many students to the Specialized High Schools.

66.     Facially neutral policies enacted with discriminatory intent are subject to strict scrutiny. *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999). Such policies are invalid unless the enacting government can prove that they are narrowly tailored to further a compelling government interest. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

67.     The Supreme Court has recognized only two government interests compelling enough to sustain a racially-discriminatory program: as a remedy for past discrimination for which the government is responsible, *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 500 (1989); and in order to obtain the benefits that flow from diversity in higher education, *Grutter v. Bollinger*, 539 U.S. 306, 328–33 (2003). Neither interest exists here. New York City has not engaged in *de jure* discrimination. And the Court has held that *Grutter's* rationale is inapplicable to secondary schools. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 724–25 (2007).

68.     Because Defendants' changes to the Discovery Program were enacted for a racially discriminatory purpose and further no compelling government interest, they violate the Equal Protection Clause.

69.     Therefore, Plaintiffs are entitled to injunctive relief to prevent Defendants from enforcing the Discovery changes and a declaration that the changes are unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1.      An entry of judgment declaring that Defendants' plan to expand and reorganize the Discovery Program for admission to New York City's Specialized High Schools violates the Equal Protection Clause.

2.      An entry of a preliminary and permanent injunction against Defendants prohibiting them from implementing the changes to the Discovery Program.

3.      An award of attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988.

4.      An award of any further legal or equitable relief this Court may deem just and proper.

DATED:  December 13, 2018.

Respectfully Submitted,

S/ Joshua P. Thompson

JOSHUA P. THOMPSON, Cal. Bar No. 250955*
WENCONG FA, Cal. Bar No. 301679*
OLIVER J. DUNFORD, Cal Bar No. 320143*
CHRISTOPHER M. KIESER, Cal. Bar. No. 298486*
Pacific Legal Foundation
930 G Street
Sacramento, CA  95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747
E-Mail:  JThompson@pacificlegal.org
E-Mail:  WFa@pacificlegal.org
E-Mail:  ODunford@pacificlegal.org
E-Mail:  CKieser@pacificlegal.org

*Counsel for Plaintiffs*

*\*Pro Hac Vice Motions Pending*