**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHRISTA McAULIFFE INTERMEDIATE
SCHOOL PTO, INC., et al.,                                           Case No. 1:18-cv-11657

                                        Plaintiffs,

                                                                    **PLAINTIFFS'**
                    -against-                                       **MEMORANDUM**
                                                                    **IN OPPOSITION TO**
BILL de BLASIO, in his official capacity as                         **MOTION TO INTERVENE**
Mayor of New York City, et al.,

                                        Defendants,

and

TEENS TAKE CHARGE, et al.,

                    Proposed Defendant-Intervenors.
_____

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

I. FACTUAL BACKGROUND .................................................................................... 2

II. THE PROPOSED INTERVENORS ARE NOT ENTITLED TO INTERVENTION AS OF
RIGHT ........................................................................................................................ 5

    A. The Proposed Intervenors' Speculation Regarding Defendants' Future Conduct Does
Not Rebut the Presumption of Adequacy ................................................................... 7

    B. Differences in Proposed Litigation Strategy Do Not Create Adversity of Interests ... 11

III. PERMISSIVE INTERVENTION IS NOT APPROPRIATE ............................................ 14

CONCLUSION ................................................................................................................... 16

## **TABLE OF AUTHORITIES**

### **Cases**

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) ........................................................................ 6

*Brennan v. New York City Board of Education*,
   260 F.3d 123 (2d Cir. 2001) ............................................................................ 9

*British Airways Bd. v. Port Auth. of New York & New Jersey*,
   71 F.R.D. 583 (S.D.N.Y. 1976) ................................................................. 14, 15

*Butler, Fitzgerald & Potter v. Sequa Corporation*,
   250 F.3d 171 (2d Cir. 2001) ............................................................................ 5

*Cook v. Pan Am. World Airways, Inc.*,
   636 F. Supp. 693 (S.D.N.Y. 1986) ................................................................. 15

*Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*,
   51 F. Supp. 972 (D. Mass. 1943) ............................................................... 14, 15

*Daggett v. Comm'n on Governmental Ethics & Election Practices*,
   172 F.3d 104 (1st Cir. 1999) ......................................................................... 6, 7

*Dorsett v. County of Nassau*,
   283 F.R.D. 85 (E.D.N.Y. 2012) ..................................................................... 11

*Friends of the E. Hampton Airport, Inc. v. FAA*,
   No. 15-CV-0441(JS)(ARL), 2016 WL 792411 (E.D.N.Y. Feb. 29, 2016) ........... 11

*Great Atlantic & Pacific Tea Co. v. Town of East Hampton*,
   178 F.R.D. 39 (E.D.N.Y. 1998) ............................................................ 5, 10, 14, 15

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
   Nos. 12 Civ. 5067 & 12 Civ. 7139 (JFK),
   2018 WL 840081 (S.D.N.Y. Feb. 12, 2018) ...................................................... 9

*Kleissler v. United States Forest Service*,
   157 F.3d 964 (3d Cir. 1998) ............................................................................ 9

*LULAC v. Clements*,
   884 F.2d 185 (5th Cir. 1989) ........................................................................... 8

*LULAC v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ...................................................................... 7, 8

*Mayhew v. KAS Direct, LLC*,
   No. 16-CV-6981-VB, 2018 WL 3122059 (S.D.N.Y. June 26, 2018) ........................................ 5

*Moosehead Sanitation Dist. v. S.G. Phillips Corp.*,
   610 F.2d 49 (1st Cir. 1979) .............................................................................................. 8

*Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Envtl. Conservation*,
   834 F.2d 60 (2d Cir. 1987) ........................................................................................ 11,12

*New Mexico Off-Highway Vehicle All. v. United States Forest Service*,
   540 F. App'x 877 (10th Cir. 2013) ................................................................................. 10

*Parents Involved in Cmty. Schs. v. Seattle School District No. 1*,
   551 U.S. 701 (2007) ...................................................................................................... 12

*Perry v. Proposition 8 Official Proponents*,
   587 F.3d 947 (9th Cir. 2009) ......................................................................................... 11

*Prete v. Bradbury*,
   438 F.3d 949 (9th Cir. 2006) ....................................................................................... 6, 7

*San Juan City. v. United States*,
   503 F.3d 1163 (10th Cir. 2007) ..................................................................................... 10

*Stuart v. Huff*,
   706 F.3d 345 (4th Cir. 2013) .................................................................................. 6, 7, 11

*United States v. Brennan*,
   650 F.3d 65 (2d Cir. 2011) ............................................................................................ 13

*U.S. Postal Serv. v. Brennan*,
   579 F.2d 188 (2d Cir. 1978) .................................................................................. 5, 10, 14

*United States v. City of New York*,
   198 F.3d 360 (2d Cir. 1999) .......................................................................................... 11

*United States v. City of New York*,
   820 F.2d 554 (2d Cir. 1987) ..................................................................................... 5, 6, 9

*United States v. Virginia*,
   518 U.S. 515 (1996) ....................................................................................................... 13

*United States v. Yonkers Board of Education*,
   902 F.2d 213 (2d Cir. 1990) ........................................................................................... 6

*Wade v. Goldschmidt,*
   673 F.2d 182 (7th Cir. 1982) ............................................................................ 6

*Western Energy All. v. Zinke,*
   877 F.3d 1157 (10th Cir. 2017) ...................................................................... 10

*Woodman v. WWOR-TV, Inc.,*
   411 F.3d 69 (2d Cir. 2005) .............................................................................. 13

## Statutes

Federal Rules of Civil Procedure
   24(a)(2) ........................................................................................................ 5, 8
   24(b)(3) .......................................................................................................... 14

New York Education Law
   2590-g(12)(b) (1997) ......................................................................................... 2

## Other Authorities

Hu, Winnie,
   *Elite New York High Schools to Offer 1 in 5 Slots to Those Below Cuttoff*,
   N.Y. Times (Aug. 13, 2018),
   https://www.nytimes.com/2018/08/13/nyregion/discovery-program-specialized-chools-
   nyc.html ............................................................................................................ 3

## INTRODUCTION

This case presents a single legal issue: whether Defendants' reorganization of the Discovery program for admission to New York City's specialized high schools violates the equal-protection rights of affected Asian-American students. Plaintiffs and Defendants have vigorously disputed this question in their preliminary injunction briefing. They will do so again on appeal of the preliminary injunction and in other briefing as the case progresses. The existing parties have ably presented all viable legal arguments on both sides of the dispute. They will continue to do so throughout the litigation.

The proposed intervenors seek to intervene to defend the Discovery program changes. Plaintiffs do not dispute that the proposed intervenors have a significant interest in maintaining the reorganized Discovery program. Nor do Plaintiffs dispute that the proposed intervenors might have a stronger, more particularized interest than Defendants in promoting racial diversity at the specialized high schools. But a strong, concrete interest in the outcome of a case does not entitle one to party status. Instead, because the proposed intervenors "seek the same relief" as Defendants, Dkt. 87-1 at 22 n.11 (Proposed Intervenors' Memo at 15 n.11), they bear a significant burden to demonstrate that Defendants do not adequately represent their interests. Since Defendants have competently and vigorously defended the Discovery changes, and will continue to do so, the proposed intervenors cannot clear this high bar. They are not entitled to intervention as of right.

Nor should the Court grant permissive intervention. The proposed intervenors' presence would more than quadruple the number of defendants and could significantly prejudice the existing parties' rights. Not only would intervention potentially complicate and increase discovery burdens on the existing parties, but the proposed intervenors also threaten to introduce a collateral legal issue—the constitutionality of the Hecht-Calandra Act that enshrines the exam-based system in

1

state law—that would distract the Court's attention from the single, narrow issue raised in Plaintiffs' complaint. This potential delay and distraction militates against intervention.

There is no doubt that the proposed intervenors have an important perspective and that their attorneys have significant experience and expertise in racial discrimination cases. But the proposed intervenors do not require party status to contribute their particular experience and expertise. Plaintiffs suggest that the proposed intervenors' contributions to this case would be best presented in an *amicus curiae* brief.

For the following reasons, the proposed intervenors' motion to intervene should be denied.

## I.      FACTUAL BACKGROUND

The New York City Department of Education (DOE) operates eight specialized high schools with exam-based admissions. Dkt. 69 at 6. These schools—particularly the older "Big Three" of Stuyvesant, Bronx Science, and Brooklyn Tech—are some of the best public high schools in the United States. *Id.* Under the terms of a 1971 New York state law known as the Hecht-Calandra Act, admissions must be based solely on an objective examination open to every eighth grader in the City. *Id.* at 7 (citing N.Y. Educ. Law § 2590-g(12)(b) (1997)). In compliance with Hecht-Calandra, the DOE utilizes the Specialized High School Admissions Test (SHSAT). *Id.* The DOE sets a cutoff score for admission to each specialized high school and distributes offers under a ranked-choice format: each student receives an offer to attend his or her highest-ranked school for which he or she qualifies. *Id.* at 7-8.

Hecht-Calandra also permits the specialized high schools to operate a "Discovery program" to give low-income students who just missed the cutoff for admission to the specialized high schools another chance at admission. *Id.* at 8. Discovery is a summer program designed to prepare these students to succeed at a specialized high school. *Id.* In the past, economically disadvantaged

students who scored in a certain range just below the original SHSAT cutoff were eligible to attend the program at participating schools. *See id.* at 11-13.[1] Recently, the Discovery program has been quite small; it accounted for just four percent of specialized high school offers for the 2017-18 school year. *Id.* at 8. Indeed, as the proposed intervenors note, Stuyvesant and Bronx Science (the two most selective specialized high schools) did not participate at all for many years. Dkt. 87-1 at 11 (Proposed Intervenors' Memo at 4).

On June 3, 2018, Defendants Mayor Bill de Blasio and Chancellor Richard Carranza announced a significant reorganization of the Discovery program. Dkt. 69 at 11-13. Defendants' primary goal was to alter the racial makeup of the specialized high schools, which in recent years have been predominantly Asian-American. *See* Dkt. 19-10 (press release announcing the Discovery changes). To achieve that end, Defendants announced that the Discovery program would expand to 20 percent of all seats at each specialized high school by the summer of 2020, quadrupling the overall size of the program and requiring the participation of the most selective schools. *Id.* But because simply expanding the size of the program would not yield the desired racial effect, Defendants also restricted eligibility for the program to students at middle schools scoring at least 60% on the DOE's Economic Need Index. *Id.*; *see also* Dkt. 69 at 12-13 (explaining the ENI restriction). At the time Defendants announced the plan, just four of the City's 23 public middle schools with majority Asian-American enrollment would have qualified for Discovery

---

[1] In the more distant past, before the "Little Five" were designated as specialized high schools, Discovery could be used as a means to "trade up" from one specialized high school to a more selective one. As former Bronx Science principal Stanley Blumenstein said, "the Discovery students typically fell just short of the school's cutoff score, and might have been admitted to another specialized school. They were essentially trading up to their top choice." Winnie Hu, *Elite New York High Schools to Offer 1 in 5 Slots to Those Below Cutoff*, N.Y. Times (Aug. 13, 2018), *available at* https://www.nytimes.com/2018/08/13/nyregion/discovery-program-specialized-schools-nyc.html.

eligibility. *See* Dkt. 18-2 (showing ENIs for all public schools with eighth-grade enrollment in 2016-17).

Plaintiffs, who include a Parent Teacher Organization at a high-performing but now-ineligible middle school, two Asian-American civil rights groups, and three individual parents, sued to prevent implementation of the new Discovery rules. Dkt. 1. Plaintiffs alleged that the changes to the Discovery eligibility criteria violated the equal protection rights of Asian-American students because those changes were intended to limit Asian-American enrollment at the specialized high schools. *Id.* ¶¶ 61-69. Plaintiffs also moved for a preliminary injunction. Dkt. 10. Defendants answered the complaint and opposed the preliminary injunction motion. Dkt. 42 & 51. This Court denied Plaintiffs' preliminary injunction motion on February 25, 2019. Dkt. 66.[2] Plaintiffs filed a notice of appeal on March 1, 2019. Dkt. 68. Discovery commenced soon after. The parties have already issued significant document request and entered into a court approved confidentiality agreement. Dkt. 90. Discovery is currently scheduled to close on September 16, 2019. Dkt. 71.

The proposed intervenors, who include organizations and individuals with a significant asserted interest in defending the Discovery changes, sought a pre-motion conference on March 29, 2019, in order to seek leave to file a motion to intervene. Dkt. 73. On April 19, 2019, this Court held a pre-motion conference and granted the proposed intervenors leave to file this motion. Dkt. 84 (scheduling conference).

---

[2] Plaintiffs cite throughout to the amended opinion and order this Court issued on March 4 (Dkt. 69), rather than the original opinion and order (Dkt. 66).

## II.   THE PROPOSED INTERVENORS' ARE NOT
## ENTITLED TO INTERVENTION AS OF RIGHT

"In order to intervene under Rule 24(a)(2) an applicant must (1) file timely, (2) demonstrate an interest in the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise adequately protected." *United States v. New York*, 820 F.2d 554, 556 (2d Cir. 1987); *see also Mayhew v. KAS Direct, LLC*, 16 CV 6981 (VB), 2018 WL 3122059, at *3 (S.D.N.Y. June 26, 2018). "Failure to satisfy any one of these requirements is sufficient grounds to deny the application." *New York*, 820 F.2d at 556. Plaintiffs do not dispute that the proposed intervenors satisfy the first three requirements. Therefore, the only contested issue is whether Defendants adequately represent the proposed intervenors' interests.

Here, the proposed intervenors share "the same ultimate objective" as Defendants—to preserve and defend the Discovery program changes. *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). Therefore, it is presumed that Defendants adequately represent the proposed intervenors interests. *Id.* In these circumstances, the Second Circuit has suggested that proof of "collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 180 (2d Cir. 2001); *see also Great Atlantic & Pacific Tea Co. v. Town of East Hampton*, 178 F.R.D. 39, 42-43 (E.D.N.Y. 1998) ("To overcome the presumption of adequate representation in the face of shared objectives, the would-be intervenor must demonstrate collusion, nonfeasance, adversity of interest, or incompetence on the part of the named party that shares the same interest."). The proposed intervenors do not—and could not—accuse Defendants of collusion, nonfeasance, or incompetence. To be entitled to intervention, they therefore must show adversity of interest between themselves and Defendants.

That is especially difficult here, as there is a heightened presumption of adequacy where the government in its sovereign capacity defends its own actions. *See United States v. Yonkers Bd. of Educ.*, 902 F.2d 213, 218 (2d Cir. 1990) (citing *New York*, 820 F.2d at 558).The heightened presumption is warranted because a government defendant "is presumed to represent the interests of its citizens" when it acts in its sovereign capacity. *New York*, 820 F.2d at 558. While the Second Circuit has not explained the precise effect of the second presumption, four circuits have explicitly concluded that "a more exacting showing of inadequacy should be required where the proposed intervenor shares the same objective as a government party." *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013) (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003); *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 111 (1st Cir. 1999); and *Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982)); *see also Daggett*, 172 F.3d at 111 (describing "two converging presumptions," the first "the goals of the applicants are the same as those of the plaintiff or defendant" and the second because "the government in defending the validity of the statute is presumed to be representing adequately the interests of all citizens who support the statute"). For example, the Fourth Circuit reasoned that "when a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government." *Stuart*, 706 F.3d at 351. In short, "to permit private persons and entities to intervene in the government's defense of a statute upon only a nominal showing would greatly complicate the government's job." *Id.*

Many courts have considered these presumptions to be a near complete bar to intervention alongside a government defendant. In *Prete v. Bradbury*, 438 F.3d 949, 957-59 (9th Cir. 2006), the Ninth Circuit held that the district court abused its discretion by permitting the Oregon AFL-CIO to intervene as of right to defend a statute prohibiting payment to signature-gatherers for ballot

initiatives. Since the AFL-CIO and the state shared the same objective (to defend the law), the court required a "very compelling showing" on the union's part to overcome the heavy presumption that the state adequately represented its interests. *Id.* at 957. The court specifically rejected the would-be intervenor's arguments that its more specific knowledge regarding the initiative process entitled it to intervention, countering that the state also had significant expertise in the area. *Id.* at 958-59. And in *Stuart*, the Fourth Circuit rejected a group of pro-life physicians' attempt to intervene to defend an informed-consent abortion law, despite the proposed intervenors' suggestions that their interest in defending the law was "stronger" and more "specific" than the state's. 706 F.3d at 353.[3]

The proposed intervenors raise two main arguments in their attempt to overcome these "two converging presumptions." *Daggett*, 172 F.3d at 111. First, they speculate that Defendants, for various reasons, might not remain steadfast in defending the Discovery changes and thereby diverge from the proposed intervenors' interests. And second, they disagree with elements of Defendants' litigation strategy, including Defendants' decision to answer the complaint rather than moving to dismiss and failure to raise a particular argument in defense of the Discovery changes. For the reasons discussed below, neither is sufficient to overcome these significant presumptions.

### A.   The Proposed Intervenors' Speculation Regarding Defendants' Future Conduct Does Not Rebut the Presumption of Adequacy

The proposed intervenors suggest that Defendants are not reliable allies in defense of the Discovery changes. They point to Defendants' concurrent interest in orderly placement of students and timely resolution of this litigation as reasons why Defendants might eventually retreat and

---

[3] *See also Daggett*, 172 F.3d at 112 (rejecting intervention because "[t]he Attorney General is prepared to defend the constitutionality of the Reform Act in full, and there is no indication that he is proposing to compromise or would decline to appeal if victory were only partial.")

capitulate to a settlement adverse to the proposed intervenors' interests. But the proposed intervenors "must produce something more than speculation as to the purported inadequacy" to justify intervention. *Moosehead Sanitation Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979); *see also LULAC v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997) (proposed intervenor's "assertion that its interest might, either in 1998 or at some other unspecified time in the future, diverge from the interest of the governor and attorney general is purely speculative, and does not justify intervention as a full-fledged party"); *LULAC v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989) (proposed intervenor must have "more than speculation as to the purported inadequacy" to warrant even *permissive* intervention). They cannot do so here.

Defendants have shown no signs of retreat in their defense of the Discovery changes— changes that Defendants themselves created. That leaves the proposed intervenors to engage in rank speculation about whether Defendants have sufficient "commitment to follow through" with defending their own policies in the future. Dkt. 87-1 at 31 (Proposed Intervenors' Memo at 24). Yet the mere possibilities that the government's position might change in the future, or that a new administration would reverse course, are insufficient to rebut the presumptions. Such a rule would open up the intervention floodgates. Indeed, "[i]f the Court were to accept [the proposed intervenors'] contention that speculation about the effects of a change of administration were sufficient to meet [the] burden of demonstrating inadequate representation, then proposed intervenors could always satisfy the third prong of Rule 24(a)(2) if the defendant were a [ ] government entity." *Wilson*, 131 F.3d at 1307 (quoting and adopting an argument from the Appellee's brief).[4] That is not the law.

---

[4] In any event, the current administration will remain in office for nearly three more years. during which time this case will most likely be resolved.

This is especially true because this case, unlike most of the cases in this area, does not involve the executive branch of a government defending a law enacted by the legislative branch. In the typical case, potential future conduct of the executive might be relevant if it indicates that the executive plans to stop defending the challenged law. But here, Defendants acted unilaterally to change the Discovery program eligibility criteria. It follows that Defendants could simply rescind or modify the policy in the unlikely event they had a change of heart. The proposed intervenors' presence as defendants in this case could not prevent that; once the policy is rescinded, there would be nothing left to defend.

None of the proposed intervenors' cited authorities change the result. *Brennan v. New York City Board of Education*, 260 F.3d 123 (2d Cir. 2001), was an employment discrimination case brought by the federal government against the New York City Board of Education. The government defendant there was sued in its capacity as an employer, not a sovereign, so the presumption that government defendants adequately represent their citizens did not apply. *See New York*, 820 F.2d at 558 ("In the matter at hand the State of New York is a party to the lawsuit in its capacity as employer, not as a sovereign. Thus, the representation presumption is inappropriate."). It is precisely because a government employer may "behave like a stakeholder rather than an advocate" that the threat of adverse settlement warranted intervention in *Brennan*. *Brennan*, 260 F.3d at 133. Such an assumption is not warranted where the government acts in its sovereign capacity to defend its own actions.

*Kleissler v. U.S. Forest Service*, 157 F.3d 964 (3d Cir. 1998), also misses the mark. The proposed intervenors in that case presented much more than mere speculation that the government defendant would not represent its interests; the Forest Service had declined to appeal an adverse judgment in a companion case. *Id.* at 973. And while the court allowed intervention in part out of

concern about shifting Forest Service policies, that was simply an acknowledgment that large federal agencies like the Forest Service have a "thicket of sometimes inconsistent governmental policies." *Id.* at 973-74. There are no relevant inconsistencies here. Instead, Defendants have vigorously defended the Discovery changes while still attending to their administrative interests. Likewise, Defendants here are not defending an obscure portion of a regulatory morass, but a central policy of Mayor de Blasio's administration. The Third Circuit's rationale is inapplicable.[5]

The proposed intervenors and Defendants share the same "ultimate objective" in this case: to preserve the Discovery changes. *U.S. Postal Serv.*, 579 F.2d at 191. That means the Court must presume that their interests are sufficiently aligned that Defendants adequately represent the proposed intervenors. *Id.*; *see also Great Atlantic*, 178 F.R.D. at 43 ("[A]dequate representation is presumed because the Group and the Town share the same ultimate objective in this litigation, namely, a declaration that the Superstore Law was validly enacted and is constitutional."). That presumption is even stronger because Defendants are government parties acting in their sovereign capacities. Because Defendants have vigorously defended the Discovery changes and given every indication that they continue to do so, the proposed intervenors cannot defeat these presumptions

---

[5] The proposed intervenors also rely on *New Mexico Off-Highway Vehicle Alliance v. U.S. Forest Service*, 540 F. App'x 877 (10th Cir. 2013), for a similar proposition that potential future policy shifts are enough to rebut the presumption of adequacy. But as then-Judge Gorsuch pointed out in dissent, that unpublished opinion is inconsistent with prevailing Tenth Circuit precedent holding that "if an actual, non-speculative difference emerged between the would-be intervenors and the government during the life of the lawsuit, that would be the proper time to consider intervention, not before." *Id.* at 883 (Gorsuch, J., dissenting) (citing *San Juan Cty. v. United States*, 503 F.3d 1163, 1207 (10th Cir. 2007) (en banc) (plurality opinion)). Absent evidence of diverging interests, the general rule is simple: "if a case presents only a single issue on which the [government's] position is quite clear, and no evidence suggests that position might be subject to change in the future, representation may be adequate." *Western Energy All. v. Zinke*, 877 F.3d 1157, 1168 (10th Cir. 2017) (citing several executive orders signed by President Trump signaling a relevant, non-speculative change in policy). Since the proposed intervenors have nothing other than speculation that Defendants will someday change their position, these cases do not help them.

with mere speculation about Defendants' future conduct. Absent any evidence to the contrary, the Court must presume that Defendants will continue to do their jobs and defend City policy in litigation.

**B.     Differences in Proposed Litigation**
**Strategy Do Not Create Adversity of Interests**

The proposed intervenors also seek intervention because they disagree with Defendants' litigation strategy. As a general matter, "disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy." *Stuart*, 706 F.3d at 353 (quoting *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009)); *see also United States v. City of New* York, 198 F.3d 360, 367 (2d Cir. 1999) ("Representation is not inadequate simply because . . . the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy."). So, for example, the proposed intervenors' purported disagreement with Defendants' decision to answer the complaint rather than file a motion to dismiss is entitled to no weight. *See* Dkt. 87-1 at 31 n.13 (Proposed Intervenors' Memo at 24 n.13).[6]

Nor does it matter that the proposed intervenors bring "real-life" experience distinct from Defendants' institutional or political interests. *Id.* at 32-33 (Proposed Intervenors' Memo at 25-

---

[6] The proposed intervenors rely on *Dorsett v. County of Nassau*, 283 F.R.D. 85 (E.D.N.Y. 2012), and *Friends of the East Hampton Airport, Inc. v. FAA*, 15-CV-0441(JS)(ARL), 2016 WL 792411 (E.D.N.Y. Feb. 29, 2016), for the opposite proposition. *Dorsett*, however, was a permissive intervention case. It certainly did not abrogate the longstanding rule that differences in litigation strategy are not enough to rebut the presumption of adequacy for the purposes of intervention as of right. And intervention was granted in *East Hampton Airport* because the Federal Aviation Administration had yet to take a position on the issue the intervenor sought to argue. *East Hampton Airport*, 2016 WL 792411, at *6 ("While the Court acknowledges that the FAA has not yet asserted a position on the Settlement Agreement and could, in theory, support the validity of the agreement, the FAA's silence to date weighs in favor of a finding that the Committee's interests are inadequately represented."). There is no such issue here.

26). "A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party." *Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Envtl. Conservation*, 834 F.2d 60, 61-62 (2d Cir. 1987). That is particularly true in the case of government defendants, where differing interests or motives for litigation may establish inadequacy only where "the nature of those . . . interests is related to colorable legal defenses that the public defendants would be less able to assert." *Id.* at 62. The proposed intervenors' stronger and more particular motive to litigate does not matter unless they identify a specific legal argument that Defendants cannot or will not raise.

Of course, the proposed intervenors *do* suggest such an argument. Specifically, they say that the Hecht-Calandra Act itself violates the Equal Protection Clause because it was purportedly enacted for a racially discriminatory purpose, triggering Defendants' compelling interest in remedying such discrimination. Dkt. 87-1 at 32 (Proposed Intervenors' Memo at 25) (complaining of "past intentional discrimination, including the origins of the single-test admissions policy, and … the City's duty to eradicate discrimination"). But Defendants likely decided not to raise that argument not because of any conflicts of interest, but because it is not a "colorable legal defense[]" to the allegations in Plaintiffs' complaint. *Nat. Res. Def. Council*, 834 F.2d at 62. While it is true that remedying past discrimination can be a compelling government interest, Defendants wisely did not claim that the Discovery changes were remedial, since there had not been a "prior finding" of intentional discrimination as required by clear and unambiguous law. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 721 n.10 (2007). *Parents Involved* made that point crystal clear, holding that the Seattle schools could not rely on a remedial rationale because they had "not shown that they were ever segregated by law, and were not subject to court-ordered desegregation decrees." *Id.* at 720.

Hecht-Calandra has governed admissions to the specialized high schools for 48 years without constitutional incident. Defendants announced the Discovery changes against this backdrop. Without a court order declaring Hecht-Calandra discriminatory, Defendants *could not have* intended to remedy any intentional discrimination. To hold otherwise would be tantamount to holding an employer liable for discrimination on the basis of a characteristic it did not know about. *Cf. Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 81-82 (2d Cir. 2005) (rejecting such an argument). Thus, Defendants correctly declined to raise the remedial argument as a *post hoc* justification for the Discovery changes. *Cf. United States v. Brennan*, 650 F.3d 65, 106 (2d Cir. 2011) ("When applying strict or heightened scrutiny to race- or gender-based classifications in the Equal Protection Clause context, the Supreme Court has cautioned that '[t]he [actor's] justification must be genuine, not hypothesized or invented post hoc in response to litigation.'" (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)). Because the argument that Defendants have a duty to remedy past intentional discrimination is not "colorable," and would simply distract from the important issue raised in this case, the proposed intervenors are not entitled to party status in order to assert it.

In the end, if the proposed intervenors believe that Hecht-Calandra is unconstitutional, the proper remedy would be to bring their own suit against the State, not to intervene as defendants in this case. This case presents the narrow issue of whether the Discovery changes violate the Equal Protection Clause. It is not the proper vehicle to attack Hecht-Calandra. Since the proposed intervenors cannot show that Defendants do not adequately represent their interests in this case, they are not entitled to intervene as of right.

## III.    PERMISSIVE INTERVENTION IS NOT APPROPRIATE

The Court has wide discretion to grant or deny a motion for permissive intervention, but it must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Other relevant factors include: (1) the nature and extent of the movant's interests; (2) whether the existing parties adequately represent those interests; and (3) whether allowing intervention would significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Homeward Residential, Inc. v. Sand Canyon Corp.*, Nos. 12 Civ. 5067 & 12 Civ. 7139 (JFK), 2018 WL 840081, at *3 (S.D.N.Y. Feb. 12, 2018); *see U.S. Postal Serv.*, 579 F.2d at 191-92.

Granting the proposed intervenors party status will complicate and potentially delay what has been, to this point, a straightforward case. Plaintiffs pleaded one cause of action: that the Discovery changes violate the Equal Protection Clause. Defendants raised all the proper defenses and defeated Plaintiffs' motion for a preliminary injunction. The proposed intervenors now seek to add ten new defendants—six individuals and four organizations—and threaten to raise an attack on Hecht-Calandra that will distract the Court from the main issue and thus prejudice the original parties. "[I]ntervention should not be used as a means to inject collateral issues into an existing action, particularly where it serves to delay and complicate the litigation." *Great Atlantic*, 178 F.R.D. at 43. And even if the proposed intervenors were to pull back on injecting additional issues into the case, "[a]dditional parties always take additional time." *British Airways Bd. v. Port Auth. of N.Y. & N.J.*, 71 F.R.D. 583, 585 (S.D.N.Y. 1976) (quoting *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F. Supp. 972, 973 (D. Mass. 1943)). Since any delay in the adjudication of this case decreases the chance of a final decision before next year's

specialized high school offers are released, the Court should weigh even the potential for delay against intervention.

Even assuming that the potential for delay and complication is not sufficient on its own to deny intervention, granting the proposed intervenors party status would provide no benefit to the existing parties or the Court. As discussed above, Defendants adequately represent the proposed intervenors' interest in defending the Discovery changes, so that interest will be adequately represented whether or not intervention is granted. *See Great Atlantic*, 178 F.R.D. at 45 (weighing adequacy of representation against granting permissive intervention). And while Plaintiffs recognize that the proposed intervenors' attorneys have significant experience and expertise in racial discrimination cases, *see* Dkt. 87-1 at 36 (Proposed Intervenors' Memo at 29), intervention decisions should hardly turn on which attorneys represent the proposed intervenor. To the extent that some of the proposed intervenors themselves have expertise in this area, "[s]pecial knowledge or expertise alone . . . is insufficient to support a motion to intervene. Such knowledge is more appropriately advanced through amicus curiae status." *Cook v. Pan Am. World Airways, Inc.*, 636 F. Supp. 693, 698 (S.D.N.Y. 1986). It is hard to see how the proposed intervenors will contribute more to this litigation as parties than as amici.

In sum, there is little reason for the Court to grant intervention here. Either the proposed intervenors will raise additional arguments with the potential to unduly complicate the litigation and distract the Court, or they will make the same arguments as Defendants, in which case they are adequately represented and do not need to intervene. *See British Airways*, 71 F.R.D at 585 ("Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." (quoting *Crosby Steam Gage & Valve Co.*, 51 F. Supp. at 973)). The potential for delay and the inevitable additional

burden for the original parties far outweighs any benefit the proposed intervenors would bring as parties, rather than amici. Therefore, the proposed intervenors' motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the motion to intervene.

DATED:  May 17, 2019.

<div style="margin-left:40%">

Respectfully Submitted,

      S/ Christopher M. Kieser
_____
JOSHUA P. THOMPSON, Cal. Bar No. 250955*
WENCONG FA, Cal. Bar No. 301679*
OLIVER J. DUNFORD, Cal Bar No. 320143*
CHRISTOPHER M. KIESER, Cal. Bar. No. 298486*
GLENN E. ROPER, Colo. Bar No. 38723*
Pacific Legal Foundation
930 G Street
Sacramento, CA  95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747
E-Mail:  JThompson@pacificlegal.org
E-Mail:  WFa@pacificlegal.org
E-Mail:  ODunford@pacificlegal.org
E-Mail:  CKieser@pacificlegal.org
E-Mail:  GRoper@pacificlegal.org
*Counsel for Plaintiffs*

*\*Pro Hac Vice*

</div>