

ZACHARY W. CARTER
Corporation Counsel

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

THOMAS B. ROBERTS
Phone: (212) 356-0872
Fax: (212) 356-2089
E-mail: throbert@law.nyc.gov
(not for service)

May 31, 2019

The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, N.Y. 10007

      Re:  *Christa McAuliffe Intermediate School PTO, Inc. v. Bill de Blasio*,
           18cv11657 (ER)(OTW)

Dear Judge Ramos:

      Pursuant to paragraph 2.A.ii. of Your Honor's Individual Practices, we request a pre-motion conference to discuss Defendants' proposed motion for summary judgment. At the April 19, 2019 pre-trial conference, we advised the Court that Defendants may seek such permission once the offers were made for September 2019 entry to the eight Specialized High Schools ("SHS"). DOE has now made offers to attend based solely on the Specialized High School Admission Test ("SHSAT") scores and offers for the summer Discovery Program, which requires successful completion to enroll in a Specialized High School. These total offers, which represent the conclusion of the 2019 admissions process, establish that there was no discriminatory effect on Asian-American students resulting from the challenged changes to the Discovery Program, namely the increased size of the program and the modified definition of "disadvantaged," which is an eligibility requirement.

      Plaintiffs' sole claim is that these facially neutral changes violate the Equal Protection Clause of the Fourteenth Amendment. However, a violation exists only if the challenged changes were motivated by discriminatory intent <u>and</u> had a discriminatory effect on a protected group. *See*; *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)("a facially neutral statute violates equal protection if it was motivated by discriminatory animus <u>and</u> its application results in a discriminatory effect.")(underlining added), citing *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-65 (1977); *Bolton v. City of Bridgeport*, 467 F.Supp.2d 245, 252-53 (D.Conn. 2006). While the issue of discriminatory animus is certainly disputed in this case, Plaintiffs simply cannot prevail on an equal protection claim where, as here, the record conclusively establishes that there is no discriminatory effect.

      Indeed, Asian-American students actually fared better in the 2019 admission process, which implemented the challenged changes, than they did in the 2018 admissions process. In the

2018 admissions process, Asian-American students comprised 31.1% of the applicant pool and received 52.2% of the total offers (based both on SHSAT score and the Discovery Program). In the 2019 admissions process, Asian-American students were 30.7% of the applicant pool – a smaller percentage than in 2018 -- and yet received 52.5% of the total offers – a larger percentage than in 2018. Further, within just the Discovery Program, the percentage of the offers that were received by Asian-American students increased from 61.9% in 2018 to 65.4% in 2019.

While these results show that Defendants are entitled to summary judgment under Plaintiffs' theory of the case, Defendants respectfully assert that they should be granted summary judgment under the correct legal framework. The SHS admissions process relies on offers based solely on SHSAT scores, and offers based on the Discovery Program, the admission to which is based on both SHSAT scores and the challenged changes. The SHS admissions process is a facially neutral policy. Accordingly, the well-settled framework for analyzing whether a facially neutral policy has a discriminatory effect (also referred to as adverse impact, discriminatory impact and disparate impact) is applicable. If the claim is based on race and ethnicity, a recognized starting point is a comparison of the racial and ethnic composition of the passing pool (here, students who received offers) to that of the applicant pool. *Guardians Asso. of N.Y. City Police Dep't, Inc. v. Civ. Serv. Com.*, 630 F.2d 79, 86-88 (2d Cir. 1980). As stated in *United States v. City of New York*, 637 F.Supp. 2d 77, 96-97 (E.D.N.Y. 2009)(subsequent history omitted): "[statistical tests] assume that racial or ethnic groups will perform equally well absent discrimination. *See Smith*, 196 F.3d at 366 (recognizing 'null hypothesis' of no difference between compared groups)." This is called the "predicted result." *Waisome v. Port Auth. of New York & New Jersey,* 948 F.2d 1370, 1376 (2d Cir. 1991). The predicted result is that each group's percentage of the passing pool matches the group's percentage of the applicant pool. Here, Asian-American students far exceeded the predicted result; in both years they were about 30-31% of the applicant pool but over 52% of the students who received offers.

Another starting point for measuring whether a facially neutral policy has a discriminatory effect is a comparison of the passing rates of the different racial and ethnic groups. The passing rate of each group is the number who pass (here, students who received offers) divided by the number of applicants. *Guardians Asso. of N.Y. City Police Dep't, Inc. v. Civ. Serv. Com.*, 630 F.2d 79, 86-88 (2d Cir. 1980) (utilizes both predicted result and comparative passing rates); *Debra P. v. Turlington,* 644 F.2d 397, 400-402 (5th Cir. 1981). If all groups perform equally well, their passing rates are equal. Here, in the 2018 admissions process, the passing rate of Asian-American students was 31.7% (2,792 offers / 8,809 test takers). In the 2019 admissions process, the passing rate of Asian-American students was 33.3% (2,811 offers / 8,451 test takers). The passing rate of Asian-American students was the second highest group rate in the 2018 admissions process and the highest group rate in the 2019 admissions process.

The predicted result and comparison of passing rate analysis have been applied *inter alia*, in cases challenging facially neutral policies under various statutory disparate impact and disparate treatment provisions and under the Equal Protection Clause, and have been applied to Equal Protection claims arising in an educational setting. *Sharif v. N.Y. State Educ. Dep't,* 709 F.Supp. 345, 353-356, 364-365 (S.D.N.Y. 1989)(Walker, J.); *Debra P. v. Turlington, supra,* 644 F.2d at 400-402 (5th Cir. 1981). *See also, Clyburn v. Shields*, 33 F. App'x 552, 554-555 (2d Cir. 2002).

Plaintiffs appear to argue that the success rate of Asian-American students in the 2018 admissions process should be the benchmark for determining discriminatory effect. They alleged that the challenged changes would significantly reduce the number and/or percentage of Asian-American students who receive offers compared to the 2018 admissions process, that this decrease would be a discriminatory effect under the second prong of the Equal Protection analysis and that the challenged changes to the Discovery Program should therefore be enjoined. Plaintiffs' analysis is incorrect on the law and the facts. The SHS admissions process is a zero-sum situation because students are competing for a finite number of offers. If one group's performance far exceeds its predicted result, the performance of one or more of the other groups will necessarily fall short of the predicted result. Here, Asian-American students were 31.1% of the applicant pool and received 52.2% of the offers in the 2018 admission process, *while the other students who took the 2018 exam constituted 68.9% of the applicant pool but received only 47.8% of the offers.* If the Court were to accept Plaintiffs' basis for determining discriminatory effect, the result would be to essentially fix the performance of one racial/ethnic group above the predicted result and the performance of other groups below the predicted result for future admissions cycles.

Defendants have found no case that holds that changes in an exam as implemented constitute a discriminatory effect where a group that has performed significantly above the predicted result or had a passing rate significantly higher than other groups on a prior exam, performed less well – but still above the predicted result or with a higher passing rate - after changes were implemented. Indeed, a similar argument was rejected by the Second Circuit in *Hayden, supra,* 180 F.3d at 51-53. There the plaintiffs claimed that the challenged changes in the exam (which reduced but did not eliminate the exam's adverse impact on Black test takers), created a discriminatory impact on plaintiffs because they would have scored better absent the changes. The Second Circuit rejected this argument because the plaintiffs conceded they scored higher on average than the Black test takers. The court stated that "we fail to see how they can establish a claim for prejudice in light of this concession." *Id.* at 52.

Because there is no discriminatory effect and the issue of intent need not be reached for the disposition of the case, Defendants also seek an order staying discovery pending the resolution of the proposed motion. Plaintiffs' discovery requests are extremely broad, and will require enormous expenditures of time and effort by many persons, as well as an expenditure of approximately $50,000 on e-discovery, reviewing and organizing over 100,000 emails. We believe that we can work with Plaintiffs' counsel to provide them with the far more limited information they will need to respond to the motion.

Respectfully,

Thomas B. Roberts
Marilyn Richter
Assistants Corporation Counsel