

June 5, 2019

The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *Christa McAuliffe Intermediate School PTO, Inc. v. Bill De Blasio*, 18 CV11657 (ER)(OTW)

Your Honor:

Plaintiffs oppose Defendants' requests to file a motion for summary judgment and for an accompanying stay of discovery. Defendants' sole argument is that their data shows Asian-American students received a higher proportion of offers to attend the specialized high schools this year than last. For the reasons stated below, Plaintiffs respectfully submit that this lone data point, based on an apples-to-oranges comparison, is not dispositive of the case. As such, the extraordinary step of granting leave to file a premature dispositive motion is not warranted. Plaintiffs should have the opportunity to present their case after full discovery.

On June 3, 2018, Defendants announced their two-pronged plan to alter the racial makeup of New York City's specialized high schools, which have been predominantly Asian-American in recent years. Defendants first sought to abolish the exam-based admissions system, which they expect—and intend—to nearly halve Asian-American enrollment. But that change requires state legislative action which has yet to occur. Accordingly, Defendants immediately implemented the second prong: changing the Discovery summer program, which offers admission to disadvantaged students scoring just below the overall exam cutoff. The plan significantly expands the previously small program. Now, *each* specialized school must reserve seats for Discovery participants: 13 percent in 2019 and 20 percent in 2020. And it limits the definition of "disadvantaged" to students attending a middle school with an Economic Need Index of 60 percent or greater. Defendants projected—and intended—that these moves would increase Black and Hispanic enrollment at the expense of Asian-American enrollment.

Now, Defendants say they are entitled to summary judgment because, compared to last year, proportionally more Asian-American students received admission offers under the partial implementation of their plan. But "summary judgment should only be granted '[i]f *after* discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (quoting *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996)). Accordingly, "[o]nly in the rarest of cases may

The Honorable Edgardo Ramos
June 5, 2019
Page 2

summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Id*.

The Federal Rules of Civil Procedure guard against premature summary-judgment orders by permitting a non-moving party to demonstrate that, because of incomplete discovery, "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Here, Discovery has barely begun. At Defendants' request, Plaintiffs granted a total of four additional weeks to provide written responses to Plaintiffs' discovery requests, and Defendants have yet to produce any documents. Therefore Plaintiffs cannot evaluate and scrutinize the data Defendants discuss. Nor can Plaintiffs gather and review additional evidence that might place the data in context.[1]

For example, expert review will likely be required to analyze Defendants' racial modeling, which suggested that the Discovery changes would have the desired racial effect. That evidence, and other evidence such as the private statements of officials who designed the changes, will surely shed light on the data eventually provided. Permitting Defendants to move for summary judgment at such an early stage would unduly limit the record and deprive Plaintiffs of their right to use the discovery process to prove their case. That is especially true here because the evidence Plaintiffs must rely on is "uniquely in the possession of Defendants and obtainable only through the formal process of discovery authorized by the federal rules." *In re Natural Gas Commodity Litig.*, 337 F. Supp. 2d 498, 509 (S.D.N.Y. 2004).

This prejudice will exist even if Defendants do provide "all" information relevant to their theory of the issue. Notably, Defendants compare the results of the 2018 process under the old rules to the results of the 2019 process under the challenged criteria. The true effect of the partial Discovery expansion can be measured only by comparing the current results to what *would have* happened in 2019 had the challenged changes not been implemented. In addition, Defendants fail to account for the wide range of factors that could influence this—already improper—comparison. We don't know, for instance, whether the quality of test takers changed significantly over the two years. And with just two years of data, we don't know if one or both years represent statistical outliers.

What is more, 2019 represented just a partial implementation of Defendants' plan. Next year, Discovery participants will be entitled to approximately 300 more seats at the specialized high schools than in 2019. The SHSAT cutoff score will again increase, leaving

---

[1] Defendants' offer to provide the data they believe Plaintiffs will need to respond to the proposed motion inverts the typical discovery process, where the parties *requesting* documents control what evidence to seek. Plaintiffs should not have to rely on Defendants' assurance that all relevant information—on Defendants' theory of the dispositive issue—will be produced.

The Honorable Edgardo Ramos
June 5, 2019
Page 3

more students who attend Discovery-ineligible schools out in the cold. Therefore, any data presented by Defendants cannot (alone) speak to what will happen in 2020. Summary judgment should not be considered based solely on incomplete data.

Discovery could also uncover other evidence that undercuts the probative value of Defendants' data. Recent news stories have uncovered troubling examples of racial bias within the Department of Education; in one directly relevant example, the New York Post reported last week that a "DOE-sponsored panel designed to combat racism told parents that Asian American students 'benefit from white supremacy' and 'proximity to white privilege.'"[2] These incidents, if true, should make the Court more hesitant to grant summary judgment based only on documents Defendants identify as relevant to their proposed motion.

Finally, Defendants are incorrect that Plaintiffs cannot demonstrate disparate impact because Asian-Americans performed better than they would have if students were selected randomly. Were that the law, school districts could freely use facially-neutral policies to engage in racial balancing. Yet racial balancing is "patently unconstitutional." *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 311 (2013). The Equal Protection Clause protects individuals of all races equally. *See Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 289-90 (1978) (opinion of Powell, J.). *Hayden* v. County of Nassau, 180 F.3d 42, 52 (2d Cir. 1999), which involved an ex ante change to the exam rather than an ex post application of differential cutoffs, is not to the contrary. Simply put, a policy designed to decrease the number of Asian-American enrollees is discriminatory without regard to the previous performance of Asian-American students in the admissions process.[3]

For the foregoing reasons, we oppose Defendants' motion for leave to file a motion for summary judgment. We also oppose Defendants' request for a stay of discovery, given that discovery is already lagging significantly behind schedule, and a stay would surely push this case into next year.[4]

---

[2] Selim Algar, *DOE-sponsored group said Asians benefit from white privilege: parent*, N.Y. Post (May 26, 2019), https://nypost.com/2019/05/26/doe-may-have-claimed-asian-students-benefit-from-white-supremacy/?fbclid=IwAR3lSg91zbZzs4o10Z1XVc6-f4eOFxJ9JBxsSrm70EQfX8FzSG9UKDJSNjc.

[3] Plaintiffs do not propose a "one-way ratchet" that would lock in Asian-American students at their 2018 admissions rates. As Plaintiffs acknowledge, many things affect the demographic makeup of the class. If Asian-American enrollment suddenly plummeted to 40 percent, that wouldn't definitively establish disparate impact either—although, like Defendants' data, it would be one piece of evidence.

[4] Plaintiffs respectfully request that the Court refrain from scheduling a conference between June 12 and June 18, due to a preexisting conflict on the part of one of Plaintiffs' attorneys.

The Honorable Edgardo Ramos
June 5, 2019
Page 4

Sincerely,

*/s/ Christopher M. Kieser*

JOSHUA P. THOMPSON*
WENCONG FA*
OLIVER J. DUNFORD*
CHRISTOPHER M. KIESER*
GLENN E. ROPER*
Counsel for Plaintiffs

*Admitted Pro Hac Vice*