UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTA MCAULIFFE INTERMEDIATE SCHOOL PTO, INC., CHINESE AMERICAN CITIZENS ALLIANCE OF GREATER NEW YORK, ASIAN AMERICAN COALITION FOR EDUCATION, PHILLIP YAN HING WONG, YI FANG CHEN, and CHI WANG,

                Plaintiffs,

– *against* –

BILL DE BLASIO, *in his official capacity as Mayor of New York*, and RICHARD A. CARRANZA, *in his official capacity as Chancellor of the New York City Department of Education*,

                Defendants.

– *and* –

TEENS TAKE CHARGE, HISPANIC FEDERATION, DESIS RISING UP AND MOVING, COALITION FOR ASIAN AMERICAN CHILDREN AND FAMILIES, O.R., *a minor by and through his mother and next friend*, ELIZABETH PIERRET, A.S., *a minor by and through his father and next friend*, ODUNLAMI SHOWA, C.M., *a minor by and through his mother and next friend*, ROSA VELASQUEZ, K.B., *a minor by a through her mother and next friend*, TIFFANY M. BOND, and N.D.F. and N.E.F., *minor children by and through their mother and next friend*, LAUREN R. MAHONEY,

                Proposed Defendant-Intervenors

**OPINION & ORDER**

18 Civ. 11657 (ER)

RAMOS, D.J.:

Plaintiffs bring this action against Bill de Blasio, Mayor of New York, and Richard A. Carranza, Chancellor of the New York City Department of Education ("DOE"), claiming that the Mayor and Chancellor's changes to the admissions process for the eight specialized New York City public high schools violate the Equal Protection Clause of the Fourteenth Amendment because they discriminate against Asian-American students. Plaintiffs are three organizations—Christa McAuliffe Intermediate School PTO, Inc., Chinese American Citizens Alliance of Greater New York, and Asian American Coalition for Education—and three individuals—Phillip Yan Hing Wong, Yi Fang Chen, and Chi Wang, who are the parents of students in New York City public schools.

Before the Court is a motion to intervene filed by a group of organizations and children ("Proposed Intervenors") in defense of the Mayor and Chancellor's changes. Proposed Intervenors include the organizations Teens Take Charge, Desis Rising Up and Moving, Hispanic Federation, and Coalition for Asian American Children and Families; as well as O.R., by and through his mother, Elizabeth Pierret; A.S., by and through his father, Odunlami Showa; C.M. by and through his mother, Rosa Velasquez; K.B. by and through her mother Tiffany M. Bond; and N.D.F. and N.E.F., by and through their mother Lauren R. Mahoney. For the reasons stated below, Proposed Intervenors' motion is GRANTED.

I. BACKGROUND

A. The Underlying Litigation

The Court assumes familiarity with its previous decision in this case, *Christa McAuliffe Intermediate School PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253 (S.D.N.Y. 2019). As such, it will summarize only the facts necessary to resolve this motion.[1]

---

[1] These facts are taken from the Court's previous decision, *see* 364 F. Supp. 3d 253, and from Proposed Intervenors' allegations. *Herman v. New York Metro Area Postal Union*, 97 Civ. 6839 (KMW), 1998 WL 214787, at *1 (S.D.N.Y. Apr. 30, 1998) ("The applicants' well-pleaded allegations must be accepted as true

2

New York City Department of Education ("DOE") operates eight high schools that, under state law, must admit students solely on the basis of an academic exam. *See McAuliffe*, 364 F. Supp. 3d at 264. These schools are notable not only for their prestigiousness, but also for their lack of diversity. *Id.* at 264–67.

The state law that requires the specialized schools to use testing as the basis for admissions is the Hecht-Calandra Act (the "Act"). N.Y. Educ. L. § 2590-g(12)(b) (1997). The Act only explicitly names three schools—Bronx High School of Science, Stuyvesant High School, and Brooklyn Technical High School, *id.*—but the Act's testing regime currently extends to the five newer Specialized High Schools as well. Doc. 101 at 24. The test the specialized high schools use is the Specialized High School Admissions Test ("SHSAT"). The Act provides only one other means of admission—the Discovery program. Under the Act, to be eligible for the program, a student must: (1) be disadvantaged; (2) be certified by her current school as being "high potential"; (3) score just below the lowest overall score of all admitted students; and (4) successfully complete a summer preparatory program demonstrating her ability to "cope with the special high school program." *McAuliffe*, 364 F. Supp. 3d at 265. Importantly, however, the Act neither defines "disadvantaged" nor prescribes the number of students that may be admitted through the Discovery program, leaving such determination to the discretion of the Chancellor. *Id.*

In the spring of 2018, a DOE working group recommended to Chancellor Carranza that he modify the Discovery program in order to increase the racial, ethnic, geographic, and socio-economic diversity of the specialized schools. *Id.* at 267. There were two parts to the proposed changes, both of which relate to the two areas that the Act left to the discretion of the Chancellor: the size of the Discovery program and the

---

for purposes of considering a motion to intervene, with no determination made as to the merits of the issues in dispute." (citation omitted)).

definition of "disadvantaged." *Id.* First, the DOE sought to expand the program. Second, the DOE sought to change the eligibility criteria for the Discovery program. *Id.* Only the second change is at issue in this case.

The old and proposed criteria differ little except that, under the new plan, to qualify as "disadvantaged," a student would have to attend a school with a 2017–2018 Economic Need Index ("ENI") of 60% or higher. *Id.* The ENI indicator is itself based on another indicator, a student's "Economic Need Value," which measures the relative poverty of a student. *Id.* A school's ENI is simply the average ENV of its students. *Id.* at 268. A higher ENI thus indicates a poorer student body. *Id.* The ENI requirement is not insignificant because only students who attend a school with a relatively low-income student body are eligible for the Discovery program. Thus, if a student is herself very low-income but attends an intermediate school with an ENI below 60%, the student is ineligible for Discovery, despite the fact that the student would have been eligible for the program under the prior criteria. *Id.*

Modeling conducted by a DOE working group projected that the ENI requirement would change the racial makeup of the Discovery program and therefore of the specialized schools, albeit only slightly. *Id.* In particular, the projections showed a slight decline of Asian-American and white enrollment and a slight increase in Black and Hispanic enrollment. *Id.* DOE policymakers had access to these projections while considering and designing the changes to the Discovery program. *Id.*

Plaintiffs acknowledge that the proposed changes to the Discovery program are facially race-neutral. They claim, however, that the changes will have a disparate impact on Asian-American students, and that Defendants intended this effect. They note that the projected increase in Black and Latino enrollment will come largely at the expense of Asian-American students. *Id.* Recently released numbers, however, show an increase in offers for Black, Latino, *and* Asian-American applicants. Doc. 101 at 6.

### B. Proposed Intervenors

Proposed Intervenors include a current specialized high school student, seventh and eighth-grade students with increased chances of admission to the specialized high schools under the revised Discovery program, and organizations dedicated to increasing diversity and integration in New York City public schools. *Id.* at 3.

The students include O.R., A.S., C.M., N.D.F., N.E.F., and K.B. O.R. is an Afro-Latino junior at one of the specialized high schools who gained admission by participating in the Discovery program. Though he has thrived there, he has experienced tokenism in the classroom and can speak to the negative impacts of the lack of diversity at his school. *Id.* at 9. A.S., C.M., N.D.F., and N.E.F. are Black and Latino eighth-graders who have applied to the specialized high schools and qualify for the revised Discovery program. Because their SHSAT scores were not high enough to qualify for automatic admission to one of these schools, the Discovery program now offers their only possible chance of admission. *Id.* at 9–12. K.B. is a Black seventh-grade student who plans to apply to a specialized high school, qualifies for the revised Discovery program, and is currently participating in a SHSAT preparation program. *Id.* at 10–11.

The organizations include Teens Take Charge, Hispanic Federation, Desis Rising Up and Moving, and Coalition for Asian American Children and Families. Teens Take Charge is a student-led group that advocates for educational equity and whose members come from more than thirty different high schools across all five New York City boroughs. *Id.* at 12. Hispanic Federation, Desis Rising Up and Moving, and Coalition for Asian American Children and Families are nonprofit member organizations who have a history of advocating for education equity. Hispanic Federation works to support Hispanic Families and strengthen Latino institutions. *Id.* at 13–14. Desis Rising Up and Moving focuses on helping low-income South Asian and Indo-Caribbean communities. *Id.* at 13. And Coalition for Asian American Children and Families advocates for equity and opportunity for marginalized Asian Pacific American children and families. *Id.* at 14.

In addition to their policy work, all four organizations have members who have an interest in increased racial diversity at the specialized high schools and who stand to benefit from the revised Discovery program. *Id.* at 12–14.

Together, Proposed Intervenors seek to show that the race-neutral revised Discovery program is "designed to mitigate the gross deficiencies of an admissions program that rests on a single test, to expand equal access to publicly-funded educational opportunities, and to increase diversity along geographical, socioeconomic, and racial lines in the Specialized High Schools." *Id.* at 6. In intervening, they seek to "vigorously defend the modest gains that the [revised Discovery program] has engendered." *Id.* at 7.

### C. Procedural History

Plaintiffs filed their complaint and a motion for preliminary injunction on December 13, 2018, alleging that the revised Discovery program violated the Equal Protection Clause of the Fourteenth Amendment. Docs. 1, 10. On January 10, 2019, Defendants answered the complaint, Doc. 42, and on January 16, 2019, they requested an expedited decision on the preliminary injunction motion, citing administrative concerns, Doc. 43. On February 25, 2019, the Court denied Plaintiffs' preliminary injunction motion, finding that the revised Discovery program would likely survive both rational basis and strict scrutiny review. Docs. 66, 69; *see McAuliffe*, 364 F. Supp. 3d at 273–84. The Court also found that only the three organizations and one of the individual plaintiffs had standing. *McAuliffe*, 364 F. Supp. 3d at 271–76. Plaintiffs appealed. Doc. 68. On December 20, 2019, the Second Circuit affirmed the decision but found that, on the record before it, the organizational plaintiffs also lacked standing, though it suggested that this defect might be cured. Doc. 119.

Proposed Intervenors filed their motion on June 27, 2019, while the appeal was pending. Doc. 100.

6

## II.  DISCUSSION

Proposed Intervenors have moved to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, alternatively, permissively pursuant to Rule 24(b).  If allowed to intervene, either as of right or permissively, Defendants request that the Court impose conditions preventing Proposed Intervenors from:  "(i) materially expand[ing] discovery; (ii) join[ing] new parties; (iii) bring[ing] a cross-claim against Defendants; (iv) seek[ing] relief other than dismissal of the action[;] or (v) advanc[ing] any argument or propound[ing] any discovery relating to or arising from a contention that DOE has previously discriminated against any class of students."  Doc. 92 at 8.  For the reasons stated below, Proposed Intervenors' motion is GRANTED, and Defendants' request is DENIED.

### A. Intervention

Rule 24(a)(2) provides in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Intervention as a matter of right requires an applicant to:  "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action."  *Grewal v. Cueno*, No. 13 Civ. 6836 (RA) (HBP), 2014 WL 2095166, at *3 (S.D.N.Y. May 20, 2014) (quoting *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197 (2d Cir. 2000)).  Failure to satisfy any of these criteria is sufficient to deny a motion to intervene as of right.  *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (internal quotation marks and citation omitted).[2]

---

[2] Because Proposed Intervenors are not seeking additional relief—in other words, they are seeking only to defend the revised Discovery program—the Court need not, at this point, consider whether they independently have Article III standing.  *See McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 233 (2003)

No one contests that Proposed Intervenors have filed a timely motion.  Instead, Defendants argue that Proposed Intervenors have failed to meet any of the remaining factors.  Doc. 92 at 5–6.  Plaintiffs, on the other hand, admit that Proposed Intervenors have a "strong, concrete interest in the outcome of [the] case," but maintain that this interest is adequately protected by Defendants.  Doc. 93 at 1.

  1. *Interest in the Litigation*

Defendants maintain that Proposed Intervenors have asserted certain interests that are not within the subject matter of this action, and that they therefore cannot satisfy this factor of the test for intervention as a matter of right.  Doc. 92 at 5.  For example, they cite to the Proposed Intervenors' interest in the status of the five newer specialized high schools,[3] as well as in the legislative history of the Hecht-Calandra Act.  *Id.*  However, as even Defendants admit, "some of the interests advocated by the Proposed Intervenors are implicated in this action."  *Id.*  While Defendants are correct that intervention "cannot be used as a means to inject collateral issues into an existing action," *United States v. City of New York*, 198 F.3d 360, 365 (2d Cir. 1999) (internal quotation marks and citations omitted), this is admittedly not a case where Proposed Intervenors' interests "are *only* collaterally related to the subject matter of this . . . action."  *Id.* (emphasis added).  Here, Proposed Intervenors have raised two significant interests in this litigation.  The first is "an interest in increased access to educational opportunity, which is directly impacted by this challenge to the [revised Discovery program]."[4]  Doc. 101 at 18.  The second is an

---

("[W]e need not address the standing of the intervenor-defendants, whose position here is identical to [Defendants']."), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010).  However, "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing."  *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017).

[3] As noted above, the Hecht-Calandra Act only explicitly names three schools.  Proposed Intervenors appear to suggest that DOE could have immediately changed the admissions policy for the five other specialized high schools without legislative approval.  Doc. 101 at 24.

[4] The record is silent as to whether the eighth-grade students named as Proposed Intervenors—A.S., C.M., N.D.F., and N.E.F—still maintain this interest.  However, at least the seventh-grade student, K.B., may still have an interest in increased access to the Specialized High Schools.

interest "in preserving any amount of increased racial diversity and decreased racial isolation that the [revised Discovery program] promises to bring to the Specialized High Schools."  Doc. 101 at 19.  At least these interests are "direct, substantial, and legally protectable," rather than "remote from the subject matter of the proceeding, or . . . contingent upon the occurrence of a sequence of events."  *Brennan v. New York City Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (internal quotation marks and citations omitted).  As such, the first criterion in met.

### 2. Interests Impaired by Outcome of the Litigation

Defendants next suggest that Proposed Intervenors' ability to protect their interests will not be impaired if they are not allowed to intervene.  Specifically, they posit that "[i]f Proposed Intervenors believe DOE has injured them, they may bring a separate suit against DOE.  This action will have no *res judicata* effect upon them, unless they become parties."  Doc. 92 at 5.  But Defendants misconstrue Proposed Intervenors' interests.  Their claim is not that DOE has injured them, but rather that, if the revised Discovery program were to end as a result of this litigation, their interests in educational equity and school diversity would be impacted.  Unlike in *United States v. City of New York*, to which Defendants point for support, Proposed Intervenors have not had "opportunities to raise their concerns independent of this . . . action."  198 F.3d at 366.  Indeed, Proposed Intervenors have no other avenue to defend the revised Discovery program.  And, if this Court strikes down the revised program, Proposed Intervenors would have no recourse to appeal or otherwise contest the decision if they remain non-parties.  This criterion is therefore also met.

### 3. Interests Not Adequately Protected by Defendants

Finally, both Plaintiffs and Defendants argue that, to the extent Proposed Intervenors have a legally protected interest that would be substantially affected by the outcome of this litigation, such interest is adequately represented by Defendants.  Where, as here, Proposed Intervenors share "the same ultimate objective" as Defendants, Doc.

9

101 at 21, Defendants are presumed to adequately represent their interests, and it is Proposed Intervenors' burden to overcome this presumption. *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). The Second Circuit has not set forth "a hard-and-fast rule of what form of showing must be made to rebut a presumption of adequate representation when there is an identity of interest between the putative intervenor and an existing party to the action." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 180 (2d Cir. 2001). Instead, it has offered general guidelines. "Although perhaps not an exhaustive list, we generally agree . . . that evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy." *Id.*

As an initial matter, the parties disagree over whether there is an even greater presumption of adequacy when the government is defending its own actions in a sovereign capacity. The Second Circuit has conclusively established that "[a] state is presumed to represent the interests of its citizens . . . when it is acting in the lawsuit as a sovereign." *United States v. Yonkers Bd. of Educ.*, 902 F.2d 213, 218 (2d Cir. 1990) (quoting *United States v. State of New York*, 820 F.2d 554, 558 (2d Cir. 1987)). However, a question remains as to whether this presumption is identical to that which exists when there is an identity of interests between the parties, *see, e.g.*, *Butler*, 250 F.3d 171, or if it is, instead, akin to a second, heightened presumption, *see, e.g.*, *Stuart v. Huff*, 706 F.3d 345, 351–52 (4th Cir. 2013). As Plaintiffs concede, "the Second Circuit has not explained the precise effect of th[is] second presumption."[5] Doc. 93 at 6. This Court

---

[5] A strong showing is undoubtedly required when the government party is suing in its capacity as *parens patriae*. *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 987 (2d Cir. 1984). However, that is not Defendants' posture in this litigation. At least one court in this district has interpreted Second Circuit precedent to mean that

> [I]n considering a motion to intervene as of right on the side of a government entity in an action in which the government entity is not suing as *parens patriae,* but rather is defending the legality of its actions or the validity of its laws or regulations, courts should examine both (1) whether the government entity has

need not do so either at this juncture, as it finds that Proposed Intervenors have made a strong enough showing that their interests are adverse to Defendants' so as to overcome even a heightened presumption of adequacy.

Proposed Intervenors suggest that their interests are adverse to Defendants' in at least four ways. First, they argue that they have a long-term interest in promoting diversity in the Specialized High Schools, which Defendants may not adequately represent both during this litigation and beyond. Second, they argue that Defendants have independent interests both in resolving this case and in timeliness that may come into conflict with their interests in promoting diversity. Third, they posit that they will bring a real-life perspective to this litigation that Defendants cannot bring on their own. Finally, they argue that Defendants are disincentivized from raising certain factual and legal arguments that may be necessary to defend their position. The Court addresses each of these in turn.

a. Long-Term Interests

Proposed Intervenors posit that "this administration has enacted the modest changes at issue in this case only after years of advocacy by parents and civil rights groups." Doc. 101 at 22. As such, Defendants cannot be presumed to adequately represent Proposed Intervenors' interests during this litigation, as their policy position might change; nor can Defendants be presumed to adequately represent Proposed Intervenors' interests in a long-term solution that can "withstand the policy changes of future administrations." *Id.* Proposed Intervenors cite to *New Mexico Off-Highway Vehicle Alliance v. U.S. Forest Service*, 540 F. App'x 877 (10th Cir. 2013), and *Kleissler v. U.S. Forest Service*, 157 F.3d 964 (3d Cir. 1998) in support of these propositions. In

---

demonstrated the motivation to litigate vigorously and to present all colorable contentions, and (2) the capacity of that entity to defend its own interests and those of the prospective intervenor.

*Herdman v. Town of Angelica*, 163 F.R.D. 180, 190 (W.D.N.Y. 1995).

*Off-Highway Vehicle Alliance*, the Tenth Circuit held that environmental groups could intervene as of right in a challenge to the Forest Service's plan to reduce the number of roads and trails available for motor vehicle use in Santa Fe National Forest.  In so holding, it found that "there is no guarantee that the Forest Service's policy will not shift during litigation; it may decide to grant the [Plaintiff's] goals in full or in part."  540 F. App'x at 881.  Similarly, in *Kleissler*, the Third Circuit allowed school districts, municipalities, logging companies, and trade associations to intervene as of right in an action seeking to restrict logging activities in Allegheny National Forest, finding that "[a]lthough it is unlikely that the intervenors' economic interest will change, it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts."  157 F.3d at 974.

Of course, neither of these cases are binding on this Court.  Moreover, they are distinguishable in key ways.  In *Off-Highway Vehicle Alliance*, the Forest Service had declined to take a position on the motion to intervene.  In allowing the motion to intervene, the court found that this "silence on any intent to defend the [environmental groups'] special interests [was] deafening."  540 F. App'x at 822 (internal quotation marks and citation omitted).  This is not the case here, where Defendants have asserted that they "can and will adequately defend the legality of the challenged changes to the Discovery [p]rogram."  Doc. 92 at 6.  And in *Kleissler*, the Forest Service had declined to appeal an adverse ruling in a companion case, giving "legitimate pause to the lumber companies' confidence in adequate representation by the Service."  157 F.3d at 973.  The court there found that "the government represents numerous complex and conflicting interests in matters of this nature," and that the intervenors' business interests "may become lost in the thicket of sometimes inconsistent governmental policies."  *Id.* at 973–74.  Proposed Intervenors have pointed to no such inconsistent policies here.  Though they refer to Defendants' approach as "modest," this in no way suggests that Defendants' commitment to defending the revised Discovery program is insincere.  Unlike in both

12

*Off-Highway Vehicle Alliance* and *Kleissler*, Proposed Intervenors' fears that Defendants will switch course mid-litigation is based on nothing more than speculation. Without more, this is insufficient to warrant intervention as of right.[6]

      b.  *Interests in Case Resolution and Timeliness*

Next, Proposed Intervenors posit that Defendants have an institutional interest in the timely resolution of this case that may compete with their interests in maintaining the revised Discovery program. In support, Proposed Intervenors point to *Brennan v. New York City Department of Education*, a Title VII action where the Second Circuit upheld intervention as of right, finding that the Board of Education had both an interest in defending its hiring practices and "an equally strong or stronger interest in bringing such litigation to an end by settlements involving the displacement of employees who are not parties to the action." 260 F.3d at 133. However, as the Second Circuit noted in that case, the Department of Education was being sued in its capacity as an employer. In this capacity, the Court found, the Department of Education might "behave like a stakeholder rather than an advocate." *Id.* Here, however, there is little concern that Defendants will not behave as Proposed Intervenors' advocates.[7] Certainly, the record gives no indication that Defendants will seek to settle this litigation in a way that harms Proposed Intervenors.[8] Nor are disagreements over trial strategy—whether or not this has been

---

[6] As to Proposed Intervenors' concern that Defendants cannot be "presumed to adequately represent Proposed Intervenors with respect to ensuring a lasting resolution to this case designed to withstand the policy changes of future administrations," Doc. 101 at 22, the Court is unconvinced that such relief is available as this litigation is currently structured. This case presents the narrow issue of whether the revised Discovery program violates the Fourteenth Amendment's Equal Protection Clause. This question does not contemplate the issuance of a permanent injunction that would require Defendants to maintain the policy as proposed. As noted above, "[i]ntervention . . . cannot be used as a means to inject collateral issues into an existing action." *City of New York*, 198 F.3d at 365 (internal quotation marks and citation omitted).

[7] While Proposed Intervenors are correct that Defendants have chosen to maintain the five newer specialized high schools not explicitly named in the Hecht-Calandra Act under the Act's testing regime, this decision is neither at issue in nor at odds with this litigation.

[8] The Court also finds Proposed Intervenors' concerns over Defendants' request for an expedited decision overstated. This request in no way reflected a retreat from Defendants' position on the merits, but was, instead, an appeal to the Court, advising it of potential administrative ramifications should a preliminary injunction issue after a certain date. *See* Doc. 43.

influenced by Defendants' institutional interests—sufficient to suggest an adversity of interests.  "If disagreement with an actual party over trial strategy . . . were sufficient basis for a proposed intervenor to claim that its interests were not adequately represented, the requirement would be rendered meaningless."  *Yonkers Bd. of Educ.*, 902 F.2d at 218.

  c. *Individual and Community Perspectives*

  Proposed Intervenors next argue that their interests are inadequately represented because they "bring to this litigation the real-life experience of communities and families who will directly benefit from the educational opportunities presented by the [s]pecialized [h]igh [s]chools," while "Defendants bring an institutional and political perspective to th[e] controversy."  Doc. 101 at 25.  This does not go to an adverse interest, but rather to different motivations to litigate (and, if anything, suggests that Proposed Intervenors' motivations may be complementary, rather than adverse, to Defendants').  As the Second Circuit has squarely held, "[a] putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party."  *Nat. Res. Def. Council, Inc. v. New York State Dep't of Envtl. Conservation*, 834 F.2d 60, 61–62 (2d Cir. 1987).  Indeed, "[s]o long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented."  *Id.* at 62.  Here, there can be no doubt that Defendants have, at the very least, shown a motivation to litigate vigorously.

  d. *Incentive to Raise Necessary Factual and Legal Arguments*

  Proposed Intervenors' next concern, however, goes directly to whether Defendants have been reticent to present all colorable contentions.  In particular, Proposed Intervenors point to a reluctance to shed light on "evidence of past intentional discrimination, including the origins of the single-test admissions policy, and legal arguments regarding the City's duty to eradicate discrimination."  Doc. 101 at 25.

14

Presumably, such evidence would become relevant if the Court found that the revised Discovery program should be reviewed under strict scrutiny, as remedying past discrimination can be a compelling government interest. *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720–21 (2007).

Plaintiffs argue that this is not a "colorable legal defense" because there has been no previous finding that the Hecht-Calandra Act was enacted for discriminatory purposes. "Without a court order declaring Hecht-Calandra discriminatory," they argue, "Defendants *could not have* intended to remedy any intentional discrimination." Doc. 93 at 13. Proposed Intervenors correctly counter that this argument improperly goes to the merits of their claim. "[E]xcept for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention . . . ." *Oneida Indian Nation v. New York*, 732 F.2d 261, 265 (2d Cir. 1984).

Defendants, on the other hand, posit that the constitutionality of Hecht-Calandra is a purely collateral issue that "has not been raised by the parties and is not necessary to the decision in this case." Doc. 92 at 5. They further argue that challenging the constitutionality of the Hecht-Calandra Act would mean that other parties, including the State of New York, would then have the right to intervene to defend the statute. *Id.* at 3. These rationales initially sound in litigation strategy rather than self-interest. Indeed, as the Court noted in its Preliminary Injunction Order, Defendants in this case have previously announced that they would lobby the New York legislature to amend or repeal the Hecht-Calandra Act. *McAuliffe*, 364 F. Supp. 3d at 268–69.

However, Defendants have clearly shown a reticence to any defense, such as this one, that might implicate the DOE's own purported history of discrimination. Indeed, one of the very conditions they seek to impose on any possible intervention is that Proposed Intervenors not be permitted to "advance any argument or propound any discovery relating to or arising from a contention that DOE has previously discriminated

15

against any class of students." Doc. 92 at 1, 7.  In doing so, Defendants have effectively admitted their adversity to the very argument Proposed Intervenors seek to make in defense of the revised Discovery program.  This constitutes a strong showing that Proposed Intervenors and Defendants have adverse interests in this litigation and is sufficient, in this case, to overcome the presumption of adequate representation.  *See, e.g.*, *Cotter v. Mass. Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 35–36 (1st Cir. 2000) (allowing intervention as of right where applicants had expressed an intention to defend the use of racial criteria as a proper remedial measure to counter both past and current discrimination because there was ample reason for defendants "to resist a defense premised on a showing that its tests are currently in violation of law").

\*\*\*

For the reasons stated above, Proposed Intervenors' motion to intervene pursuant to Rule 24(a)(2) is granted.[9]

### B. Conditions

Defendants maintain that even if Proposed Intervenors are granted intervention as of right, the Court may still impose certain conditions on such intervention.  These conditions include that Proposed Intervenors not be permitted to: "(i) materially expand discovery; (ii) join new parties; (iii) bring a cross-claim against Defendants; (iv) seek relief other than dismissal of the action[;] or (v) advance any argument or propound any

---

[9] Even if the Court had not granted Proposed Intervenors' motion under Rule 24(a)(2), it would have granted their motion for permissive intervention under Rule 24(b).  There is no dispute among the parties that Proposed Intervenors' application is timely or that their claims share common questions of law and fact with the main suit.  Moreover, Proposed Intervenors will undoubtedly contribute "to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Grewal*, 2014 WL 2095166, at \*3 (internal quotation marks and citation omitted).  Proposed Intervenors include children directly impacted by the revised Discovery program, as well as the organizations that serve these and other children like them.  This is a unique perspective and "will greatly contribute to the Court's understanding of this case." *Miller v. Silbermann*, 832 F. Supp. 663, 674 (S.D.N.Y. 1993).

discovery relating to or arising from a contention that DOE has previously discriminated against any class of students."

"In amending Fed. R. Civ. P. 24(a), the Advisory Committee on Rules suggested that intervention of right under the Rule might be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." *Shore v. Parklane Hosiery Co.*, 606 F.2d 354, 356 (2d Cir. 1979) (internal quotation marks and citations omitted).  Courts disagree, however, on what sorts of conditions, if any, are appropriate.  *See* 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1922 (3d ed. 2019 Update).

Proposed Intervenors argue that the first four proposed conditions are largely moot.  Doc. 96 at 9–10.  At a pre-motion conference held on April 19, 2019, they represented that they did not anticipate requiring significant additional discovery; that they had no plans to file a cross-claim against the DOE or to join new parties; and that they had no plans to seek relief beyond dismissal.  As such, the Court sees no reason to impose these conditions.

As to the fifth condition, Proposed Intervenors argue that they have "raised the possibility of making this legal argument solely as a direct defense to the central claim in this case *only if* the erroneous legal standard proposed by Plaintiffs is adopted by this Court."  Doc. 96 at 9 (emphasis added).  Given this limited context and given the representation that Proposed Intervenors do not seek much discovery beyond what has already been produced, the Court fails to see how the parties would be prejudiced by the introduction of this argument.  In any event, the Court declines to hamstring Proposed Intervenors in this fashion.

## III.   CONCLUSION

For the foregoing reasons, Proposed Intervenors' motion is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 100.

SO ORDERED.

Dated:   March 24, 2020
         New York, New York

                                            EDGARDO RAMOS, U.S.D.J.