UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTA McAULIFFE INTERMEDIATE SCHOOL PTO, et al., | Case No. 1:18-cv-11657(ER)(OTW) |
| Plaintiffs, | |
| -against- | **DECLARATION OF DR. JACOB L. VIGDOR** |
| BILL de BLASIO, in his official capacity as Mayor of New York City, et al., | |
| Defendants. | |

I, Dr. Jacob L. Vigdor, declare:

1. I am a Professor of Public Policy and Governance at the University of Washington, where I have worked for the past seven years. Before that, I was a Professor of Public Policy at Duke University. I have extensive experience studying and publishing on issues of economics and public policy, including especially peer-reviewed studies on selective educational admission policies, accelerated curricula for advanced students, student outcomes in secondary school, and racial disparities in education and other domains.

2. I earned a Ph.D. in Economics from Harvard University in 1999. My thesis was entitled "Essays on the Economics of Location Choice." I earned my undergraduate degree in Policy Analysis from Cornell University in 1994.

3. Plaintiffs' counsel retained me to serve as an expert in this case. I was tasked with analyzing the racial effect of New York City's decision to change the criteria for eligibility to participate in the Discovery Program for admission at the City's specialized high schools. New York City produced, and Plaintiffs' counsel provided me with, five years of individual student data

for students who took the admissions exam. This data allowed me to analyze the effect of the challenged policy change by simulating the result of the City's admissions process under the rules in effect before the challenged changes and those in effect after.

4. The initial Report that I produced in this case is attached to this declaration as Exhibit 1. Among other things, it concludes that the Discovery Program changes reduced the representation of Asian students at Stuyvesant and Bronx Science, the two most selective of New York City's specialized high schools.

5. After my deposition, counsel for Plaintiffs informed me that Defendants' expert Mr. Michael Scuello had produced a supplemental report that was intended to refute portions of my analysis. Specifically, Mr. Scuello argued that my analysis was flawed because, in evaluating the racial impact of the Discovery changes at the eight schools and at each school individually, I considered "invitations" to the Discovery program rather than "offers."

6. At the request of Plaintiffs' counsel, I drafted a supplemental report in response to Mr. Scuello's supplemental report. My supplemental report is attached to this declaration as Exhibit 2.

7. For the reasons I explained in the supplemental report, evidence cited in the City's motion for summary judgment does not establish that I was wrong to use "invitation" data rather than "offer" data. "Invitation" in this context is a decision fully under the control of the DOE. In contrast, the conversion of invitations to offers depends to a significant extent on a student's family, who must navigate a detailed bureaucratic process, including submitting an application and in some cases producing evidence to prove that they meet the criteria for being socioeconomically disadvantaged. As documented in my supplemental report, the disadvantage to

Asian students in terms of invitations to the Discovery program is partially offset by the higher failure rates of Black and Hispanic students to navigate this process.

8. Defendants argue that it is reasonable to infer "that many students who received invitations were simply not eligible for the Discovery program." ECF No. 149, at 19. However, they make no effort to substantiate this inference and did not provide any analysis to quantify how many of the students who received invitations were ineligible for Discovery. Their brief also admits that, depending on the year, up to 31.5% of students *known* to DOE to be individually disadvantaged, and thus known to be eligible for Discovery, did not convert their invitations into offers. *Id.* For these students, the failure to receive an offer is not a matter of eligibility, but of failure to successfully navigate DOE's bureaucratic process. Likewise, some percentage of the students whose disadvantaged status was unknown did not convert their invitations into offers because they failed to navigate the process, not because they were ineligible. This percentage may be considerably higher than the percentage of students known to be eligible who failed to convert their invitations to offers, especially given the additional obstacle of needing to provide documentation to prove individual disadvantage.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, and that this declaration was executed on this <u>18th</u> day of November, 2021, in <u>Seattle, Washington</u>.

_____
JACOB L. VIGDOR